PHILIP A. SHAW et al. *v.* JAMES McCANDLESS et al.

1. CONSTITUTIONAL LAW : POWER OF CONGRESS TO REGULATE THE SALES, ETC., OF VESSELS.—The Congress of the United States may, as an incident to the power "to regulate commerce with foreign nations, and among the several States," granted by the 4th clause of section 8, Art. 1, of the Federal Constitution, pass laws regulating the sale, mortgage, and hypothecation of vessels belonging to the United States, and engaged in that commerce.

2. SAME : SHIPPING : MORTGAGE OF VESSELS, WHEN VALID.—A mortgage on a steamboat, executed and registered according to the provisions of the Act of Congress of the 29th July, 1850 (see U. S. Stat. at large, vol. 9, p. 440, and Brightley's Dig. 833), is valid and binding, although not authorized by the local law of the State in which it was executed.

APPEAL from the Chancery Court of Warren county. Hon. J. S. Yerger, chancellor.

On the 19th day of May, 1856, Shaw and Zuntz filed their bill in the Chancery Court of Warren county, alleging that on the 20th day of May, 1855, C. A. Brown and J. C. Brown, being the owners of the steamer "John Strader," were indebted to complainants in the sum of $6206, for supplies furnished the said boat, which was evidenced by a due-bill of that date, signed by C. A. Brown, as master of said vessel, and made an exhibit to the bill. That C. A. Brown, who was also the master of said boat, while she was lying in the port of New Orleans, appeared before D. J. Ricardo, a notary-public, and, in conformity with the law of Louisiana, mortgaged said boat to complainants for the payment of said due-bill; and that said mortgage was, on the 26th day of March, 1855, in conformity with the act of Congress passed on the 29th day of July, 1850, duly presented at the custom-house in the city of New Orleans, in the office of the collector of the customs for said city (where said steamboat had been duly registered and enrolled) and duly recorded, as required by said act of Congress, in the office of said collector of customs, a duly certified copy whereof is made an exhibit to this bill ; by means whereof, and by force of the said act of Congress, and of the laws of Louisiana, complainants allege they became entitled to a lien on said boat, and were entitled to a preference over James McCandless and others, who had sued out attachments

against, and had them levied upon said boat. That she was then in the hands of the sheriff of Warren county, lying in the port of Vicksburg, and held by him under said attachment. The prayer was for a foreclosure of the mortgage, and a sale of the boat; and that the proceeds thereof be paid to complainants in preference to the attaching creditors, who were made defendants to the bill.

The due-bill, made an exhibit, is for $6206 77, signed by C. A. Brown, master, in favor of complainants, and purports to be " for supplies furnished, and advances made for dockage, repairs, and hull insurance, for the benefit of steamboat John Strader." The mortgage is a formal act, passed before D. J. Ricardo, notary, &c., mortgaging the boat to complainants, to secure the payment of said due-bill. The certificate of the collector of the customs, that the mortgage was presented at the custom-house in New Orleans for record, on the 26th day of March, 1855, at 1½ o'clock, P. M., and duly recorded, was also filed; and also a certified copy of the enrollment of said boat, in custom-house at New Orleans.

James McCandless and others demurred to the bill, upon the ground that the mortgage was void by the laws of Louisiana. The demurrer was sustained and the bill dismissed, and the complainants appealed.

*Miller* and *Marshall*, for appellants.

The only questions presented by the record are, can a valid mortgage of a steamboat be executed in Louisiana, either according to the laws of that State, or of the United States? The court below was of opinion that it could not, and therefore sustained the demurrer, and dismissed the bill.

The Civil Code of Louisiana, article 3256, in words, says ships and vessels may be mortgaged. But article 3272, we are told, qualifies the previous act; and 7 Louisiana, 490, and 11 Annual Reports, 702, are believed to settle the question, in accordance with the opinion of the chancellor.

We admit the cases above-named do decide that mortgages on vessels are not valid under the State law, unless they be made according to the usages and laws of commerce. Now we ask, if the mortgage in this case, was not made according to the laws and usages of commerce? It was formally executed before a notary,

in the presence of witnesses, by the captain, who was one of the owners, and his act fully approved by his co-owner, and duly filed for record in the office of the collector of customs of the port where the vessel was enrolled, and the fact indorsed on the copy of the enrollment kept on the boat. What more do the laws and usages of commerce require ? This mortgage is substantially in conformity with the form of an act of sale given in Abbott on Shipping, appendix, page 837, form No. 27. That vessels may be mortgaged, has frequently been decided, by the courts of almost every State in the Union. See the authorities collated in Coote's Law of Mortgages, top page 304, marginal page 256, in note A, and also the case of *De Wolf* v. *Harris,* 4 Mason, 530. But whatever may be the law of Louisiana, and there is no pretence that it forbids the execution of mortgages on vessels, is not this mortgage valid under the Act of Congress of 1850 ? See U. S. Statutes at Large, vol. 9, page 440.

Section 1 of that act declares, "that no bill of sale, mortgage, hypothecation, or conveyance of any vessel, or part of any vessel, of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation, or conveyance, be recorded in the office of the collector of the customs, where such vessel is registered or enrolled."

Does not this act in express words recognize the validity of mortgages in all cases against the mortgagor, his heirs and devisees, and persons having actual notice ? And when recorded in the manner therein provided, are not all persons charged with constructive notice of it, and may it not be enforced in any court having jurisdiction ?

We are aware that the District Courts, sitting in admiralty, in construing this act, have held that material men and mariners have liens for their wages, and materials furnished, &c., in preference to mortgage creditors, whose mortgages have been duly recorded. But no such question arises here. Those very cases are authorities in favor of the validity of mortgages on vessels, and that is the only question now involved.

(See the American Law Register, April number, 1858, pages. 336, 337, and 338, case of *Marsh et al.* v. *Brig Minnie,* where that act is considered and construed.)

*C. L. Buck*, for appellees.

(No memorandum of Mr. Buck's argument has come to the possession of the reporter.)

HANDY, J., delivered the opinion of the court.

The only question involved in this case is, whether the mortgage set up in the appellants' bill is valid and effectual in law. The bill alleges, that it was executed in the State of Louisiana, and duly registered and recorded in the office of the collector of customs, in and for the city of New Orleans, where the steamboat, mentioned in the mortgage, had previously been registered and enrolled, in conformity to the Act of Congress, of 29th July, 1850, entitled "an act to provide for recording conveyances of vessels, and for other purposes."

It appears, that the Supreme Court of Louisiana have held, that the statutes of that State, do not sanction the execution of mortgages upon vessels, unless they are made according to the laws and usages of commerce. And on the authority of these decisions, the court below appears to have held, that the mortgage in this case was unauthorized by law, and invalid. These decisions would probably be conclusive of the point, if the validity of the mortgage depended entirely on the law of Louisiana. But the rule, as there held, appears to be materially affected by the act of Congress referred to, which provides, " that no bill of sale, mortgage, hypothecation, or conveyance of any vessel or part of any vessel, of the United States, shall be valid against any person, other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bills of sale, mortgage, hypothecation, or conveyance, be recorded in the office of the collector of the customs, where such vessel is registered or enrolled," &c. 9 U. S. Stat. at Large, 440.

This is a clear recognition of the power to sell or mortgage vessels, and provides the mode in which it may be effectually done. It was a matter within the power of Congress, under the authority conferred upon it to regulate commerce with foreign nations and among the States, and is incident to the power thus conferred. Before the passage of this act of Congress, the subject of the validity of mortgages upon vessels, and of their registration, was a matter

to be regulated by the laws of the States; and the rights arising under such instruments were to be determined by the laws of the States in which the transaction might have taken place; and it was competent for those courts to decide what were the laws and usages of commerce which would justify the execution of such a mortgage. But the rules held by such courts were superseded when Congress acted upon the subject, and established different regulations from those recognized by the State courts. New rules were then established by competent authority, which became the "laws and usage of commerce" in relation to the subject, and inconsistent State regulations were necessarily abrogated. Hence, when the law of Louisiana authorizes mortgages according to the laws and usages of commerce, and Congress establishes the rule regulating the subject, that rule becomes the law of commerce in relation to the subject; and if it authorizes the execution and registration of mortgages upon vessels, all mortgages made and recorded according to the requirements of the act, must be valid.

It is clear that the rule held by the Supreme Court of Louisiana, with reference to their own law, and holding that vessels are not the subjects of mortgage, is inconsistent with the act of Congress, which fully recognizes the validity of such mortgages.

Under this view, we think that the demurrer to the bill was improperly sustained; and the decree is reversed, the demurrer overruled, and the defendants required to answer within sixty days.

This case was decided at April term, 1858.