·168       NEW YORK PRACTICE REPORTS.

White's Bank of Buffalo agt. Robert Smith.

# U. S. SUPREME COURT.

WHITE'S BANK OF BUFFALO, appellant agt. THE PROCEEDS OF THE SCHOONER ROBERT EMMETT, ROBERT SMITH claimant.

By the act of Congress of July 29, 1850, a *mortgage of a vessel*, which is recorded in the *collectors office at the home port*—that is, the port where the owner resides, in pursuance of the provisions of the act, takes effect by its own force, and irrespective of the filing of the mortgage in the county clerk's office, and has preference over any subsequent purchaser or mortgagee.

The cases of *Potter* agt. *Irish*, (10 *Gray*, 414) and *Chadwick* agt. *Baker*, (54 *Maine R.*, 9) holding that in order to protect the title of the purchaser or mortgagee of a vessel, under that act, it is necessary to record the bill of sale or mortgage in the office of the collector of customs at the *port of the last registry or enrollment*, though not the home port of the vessel, *overruled*.

Congress having created, as it were, this species of property, (ships and vessels) and conferred upon it its cheif value, under the power given in the constitution to regulate commerce, there can be no good reason for entertaining any serious doubt, but it has the power to pass a *recording act* to protect the rights and title of all persons dealing in such property.

*December Term,* 1868.

APPEAL from the circuit court of the United States for the northern district of New York.

LORENZO K. HADDOCK, *of counsel for White's Bank.*

Mr. Justice NELSON delivered the opinion of the court.

This is an appeal from the circuit court of the United States for the northern district of New York.

The controversy in this case, arises out of the conflicting claims of two mortgagees to the proceeds of the Robert Emmett. One of the mortgages is executed by Gabriel Hoyt, owner of the vessel, to White's Bank, of Buffalo, on the 22d of May, 1863, for $4,000; the other by Henry Zahn, the then owner, to Robert Smith, on the 5th of June, 1865, for $6,000.

The mortgage to White's Bank, was recorded the 12th of June, 1863, in the collector's office at Buffalo, where the Emmett was duly enrolled, and at which place the owner resided. The mortgage to Smith was recorded in the collector's office at the port of Sandusky, Ohio, on the 17th of June, 1865, where the Emmett was also duly enrolled, and at which place the owner, Zahn, then resided.

The mortgage to White's Bank, was filed in the office of the clerk of the county of Erie, on the 5th day of June, 1863, according to the requirement of New York law, in respect to personal mortgages; but it was not re-filed at the end of a year as required by that law in order to perpetuate the lien.

The Emmett was libeled for seamen's wages on the 29th of August, 1865, which was a paramount lien on the vessel, and was sold under a decree in that suit. The remnants remaining in the registry of the district court after satisfying this demand, constitute the subject of contest between the present parties. The last mortgagee, Robert Smith, claims that the lien of the mortgage to White's Bank was lost, on account of the omission to re-file it in the clerk's office of Erie county, at the end of the year, and which raises the material question in the case, namely: whether or not the recording of the mortgage in the collector's office at Buffalo had the effect, by its own force, and irrespective of the filing in the clerk's office, to give a preference to it, over any subsequent purchaser or mortgagee? The act of Congress, July 29, 1850, on this subject, is as follows:

"That no bill of sale, mortgage, hypothecation, or conveyance of any vessel, or part of any vessel of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation, or conveyance be recorded in the office of the collector of customs where such vessel is registered or enrolled."

The next section provides for recording these bills of sale, &c., and also certificates of discharge and cancellation in a proper book.   No provision was made for any authentication of these instruments preparatory to their being recorded. They were received by the collector from the parties delivering them, and were recorded with no proof of their verity, except from the execution of the same, as appeared on their face; and this, both as it respects the bills of sale, mortgages, &c., and the discharge and cancellation of the same. And the law thus stood for some fifteen years.   On March 3, 1865, it was enacted that "no bill of sale, mortgage, hypothecation, conveyance, or discharge of mortgage, or other incumbrances of any vessel, shall be recorded unless the same is duly acknowledged before a notary public, or other officer authorized to take acknowledgement of deeds."

Previous to this act of 1850, providing for the recording of bills of sale, mortgages, &c., of vessels, they were required to be filed by the laws of many of the states in the clerk's office, or some place of public deposit in the town or city where the vendor or morgagor resided, in order to protect the interest of the vendee or mortgagee against subsequent *bona fide* purchasers or mortgagees.   And this practice continued in many places after the passage of the act of 1850, for abundant caution, on account of a doubt as to the effect that would or might be given to it as a recording act from the very imperfect provisions of the law.   There can be no doubt, however, but that the system of recording these instruments in the collector's office at the home port of the vessel furnishes a much readier opportunity to persons dealing in this species of property to obtain a knowledge of the condition of the title, than by the former mode under the state law.   We say the home port, because it is quite apparent from the language of the act, "be recorded in the office of the collector of customs where such vessel is registered or enrolled," means the permanent registry or enrollment which is at the port, "at or nearest to which the

owner, if there be but one, or if more than one, the husband, or acting and managing owner of said ship or vessel usually resides. And the name of the said ship or vessel, and the port to which she shall so belong, shall be painted on her stern on a black ground in white letters of not less than three inches in length," and, if found without such name and the name of the port, the owner is subject to a penalty of fifty dollars. (*Act 31st December*, 1792, § 3.)

The same act provides for a temporary registry when the owner acquires her in a different district from that in which he resides; but this is to enable him to bring the vessel within the home district, or port, where she can obtain her permanent registry. The character of this temporary registry is expressed on the face of it, and is delivered up to the collector on the issuing of the permanent registry, whose duty it is, to return it to the collector that granted it—(*Id.*, § 11.)

So a registered vessel may be enrolled, or an enrolled vessel registered, on the master giving up to the collector the registry or enrollment, as the case may be; and if such vessel shall be in any other district than the one to which she belongs, the collector of such district upon the master taking an oath, that according to his best knowledge and belief, the property remains as expressed in a registry or enrollment proposed to be given up, and on giving the bond required, shall make the exchange above mentioned; but the collector to whom the registry or enrollment is given up shall transmit the same to the register of the treasury, and the registry or enrollment granted in lieu thereof, shall within ten days after the arrival of such vessel within the district to which she belongs, be delivered to the collector of said district, and be by him cancelled.—(1 *U. S. St.*, *p.* 140, § 3.)

This exchange of registry or enrollment, may occur in any part of a voyage or voyages, and the temporary registry or enrollment, continues till the vessel in the regular

course of her employment, arrives at the port to which she belongs, where she may again obtain a renewal of her permanent documentary title. As we have said, we think it apparent that the collector's office in the district in which this temporary registry or enrollment is made, is not the office contemplated by the act of 1850. The temporary papers are made in the office where the vessel happens to be at the time of the sale or exchange of the documentary title, and continues only till her arrival at the port to which she belongs. Her name and the name of her home port remains painted on her stern, notwithstanding this temporary document, and satisfies the requirement of the act in that respect, and both continue until a new home port is acquired by a change of ownership, requiring a permanent registry or enrollment on account of different residences of the owners, when the name of that port is substituted. And, confining the record to the home port, there is great propriety and convenience in requiring bills of sale, mortgages, &c., of the whole or parts of a vessel to be made matters of record in this office, as in the registries there are the names of all the owners under oath, together with their residences; and since the act of 1850, containing also the part or proportion of such vessel belonging to each owner (§ 5) ; and in this same section it is provided that " in all bills of sale of vessels registered or enrolled, shall be set forth the part of the vessel owned by each person selling, and the part conveyed by each person purchasing." And in this connection we may also mention, that in case of the sale of a vessel, which can only be to a citizen or citizens of the United States, and a new permanent registry becomes necessary, the former certificate of registry must be delivered to the collector to whom application is made for the new registry, to be transmitted by him to the register of the treasury, to be canceled ; and in every such sale or transfer of a vessel there shall be some instrument in writing in the nature of a bill of sale, which shall recite at length the certificate of the former registry,

otherwise the ship or vessel shall be incapable of being registered anew, (*Id.*, § 14). And as this bill of sale is recorded in the collector's office in which the new permanent registry is made, it affords information to any person examining it as to the former home-port and collector's office in which the vessel had been previously registered, and where examination can be made for any bill of sale, mortgage, or other incumbrance upon or against the vessel.

It will be seen, therefore, as the law now stands, there can be very little difficulty on the part of a purchaser or mortgagee in ascertaining the true condition of the title of a vessel, as it respects written evidences of the same, or of incumbrances thereon, from an examination of the records of the collector's office at the several home-ports of the vessel, as the record of the last home-port refers to the preceding one, the last bill of sale incorporating into it a copy of the previous certificate of registry. In this respect the system of recording in the collector's office, possesses very great advantages over the filing of these instruments in the clerk's offices, where the vendor or mortgagor happened to reside at the time, as no means exist under this practice by which the subsequent purchaser or mortgagee, by any diligence, could obtain a knowledge of the actual condition of the title.

We are aware that in the case of *Potter* agt. *Irish*, (10 *Gray*, 414,) the court came to the conclusion, upon an examination of the acts on this subject, that bills of sale, mortgages, &c., under the act of 1850, in order to protect the title of the purchaser or mortgagee, should be recorded in the office of the collector of customs at the port of the last registry or enrollment, though not the home port of the vessel. And the court in the case of *Chadwick* agt. *Baker*, (54 *Maine R.*, *p.* 9,) followed this decision.

Our respect for the courts rendering these decisions have led us to examine the several statutes upon which this question depends with more than usual care, and after the

best consideration we have been able to give, are obliged to differ with them. We think the better construction of these statutes, leads to the conclusion that the home-port was the one in the contemplation of Congress, at which these instruments were to be recorded, and is the more appropriate one in furtherance of the object for which the act was passed.

The temporary registry or enrollment, is at a collector's office, in a district where the owners do not reside, and is made without any reference to such residence. It is made at any collector's office, and at any ports within the limits of the United States, where the vessel may happen to be at the time this temporary document is registered.

While the home-port may be at the city of New York, the temporary registry or enrollment, may be made at New Orleans or San Francisco, or Portland, in Oregon, where it would be as inconvenient for the vendee or mortgagee to make a record of the bill of sale or mortgage, as it would be for a person dealing in this species of property to acquire any notice of such record; whereas, a record at the home-port is within the district where the owners reside, and where negotiations or dealings in respect to this species of property would naturally be conducted.

Some question is made as to the power of Congress over the title and property of vessels of the United States, to such an extent, as to enable it to pass a recording act.

But, after the regulation of this species of property by the several acts of Congress to which we have referred, and in respect to which there has never been a question, there can be very little hesitation in conceding the power to protect the rights of subsequent *bona fide* purchasers and mortgees therein.

Ships or vessels of the United States are the creations of the legislation of Congress. None can be denominated such, or be entitled to the benefits or privileges thereof, except those registered or enrolled according to the act of September 1, 1789; and those which, after the last day of March,

White's Bank of Buffalo agt. Robert Smith.

1793, shall be registered or enrolled in pursuance of the act of the 31st of December, 1792, and must be wholly owned by a citizen, or citizens, of the United States, and to be commanded by a citizen of the same. (1 *U. S. St.*, *p.* 287.)

And none can be registered or enrolled, unless built within the United States, before or after the 4th of July, 1776, and belonging wholly to a citizen or citizens of the United States, or not built within said states, but on the 16th of May, 1789, belonging, and thence continuing to belong, to a citizen or citizens thereof; or ships or vessels captured from the enemy in war, by a citizen, and lawfully condemned as prize, or adjudged to be forfeited for a breach of the laws of the United States, and being wholly owned by a citizen or citizens thereof.—(*Id.*, § 2, *p.* 288.)

Ships or vessels not brought within these provisions of the acts of Congress, and not entitled to the benefits and privileges thereunto belonging, are of no more value as American vessels than the wood and iron out of which they are constructed. Their substantial if not entire value consists in their right to the character of national vessels, and to have the protection of the national flag floating at their mast's head.

Congress having created, as it were, this species of property, and conferred upon it its chief value under the power given in the constitution to regulate commerce, we perceive no reason for entertaining any serious doubt, but that this power may be extended to the security and protection of the rights and title of all persons dealing therein. The judicial mind seems to have generally taken this direction. (*The Martha Washington*, 25 *Law R.*, 22 ; 19 *Alabama R.*, 722 ; 8 *California R.*, 363; 36 *Miss. R.*, 296.)

The decree below reversed, and a decree entered for the appellant.