N. M. LAWRENCE v. R. T. HODGES, Sheriff, et als.

*Ships—Registration—Mortgage.*

1. The power conferred upon Congress by the Constitution to regulate commerce with foreign nations and between the States, is paramount and exclusive, and includes the power to regulate navigation by all manner of vessels upon navigable waters flowing from one State into another, or from a State into the sea, and extends to giving to Congress the power to prescribe the methods of sale and transfer of such vessels.

2. Enrolment or registration, under the act of Congress, and not the kind of service in which they are engaged, gives to vessels their national character, and renders them subject to the laws of the United States.

3. Where a vessel which was duly enrolled under the act of Congress, but which was entirely used in North Carolina waters, was mortgaged, which mortgage was recorded in the custom house in accordance with the act of Congress, but was not registered as required by the North Carolina registration acts ; *It was held,* that such recording was valid.

4. It is not necessary that a vessel used entirely on the waters of this State should be enrolled as required by the act of Congress, although it may be done, if the owner desires, and if done, the vessel becomes a national vessel.

5. Such mortgage proven before a clerk of the Superior Court, as he is *ex officio* a notary public, is a compliance with the act of Congress.

(*DeCourcy* v. *Barr*, Busb. Eq., 181, cited and approved; *Wiswall* v. *Potts*, 5 Jones' Eq., 184, overruled in part).

CIVIL ACTION, heard before *Graves, Judge,* at Fall Term, 1884, of BEAUFORT Superior Court.

This is an action of claim and delivery, brought on the 31st day of January, 1884, in the Superior Court of the county of

Beaufort, to recover the possession of the steamer "Edgecombe." This steamer is a screw propeller of $52 \frac{90}{100}$ tons burthen, and enrolled under the laws of the United States in the Pamlico District in North Carolina in the custom house at New Berne. Her owners are native citizens of the United States, residing within that district at the time of such enrolment, and before the execution of the mortgages hereinafter mentioned. She was employed solely in the internal commerce of this State, and used for the purpose of navigation in the waters of the Pamlico River and Sound.

One B. S. Haskins owned this steamer, and on the 12th day of November, 1880, executed a mortgage of the same to N. S. Fulford to secure a debt of $1,500. The execution of this mortgage was acknowledged before the clerk of the Superior Court of Beaufort county, on the 12th day of November, 1880, and thereafter recorded in the custom house at New Berne, and on the 29th day of January, 1884, the mortgagee assigned his mortgage to the plaintiff.

On the 16th day of January, 1882, the said B. S. Haskins executed and delivered to the plaintiff a second mortgage of the steamer mentioned, and acknowledged the execution of the same before the clerk of the Superior Court of said county, and it was likewise recorded in the custom house at New Berne.

The Merchants' and Farmers' Transportation Company was a corporation organized under the laws of this State, and on the 6th day of July, 1884, the said B. S. Haskins undertook, by bill of sale, to convey said steamer to the last named company. The execution of this bill of sale was acknowledged by the maker thereof before J. D. Myers, a notary public, on the same day it was executed and recorded.

At the time the last mentioned bill of sale was executed, the mortgages above named had not been discharged, and the debts secured by them have not been paid. These mortgages were not registered in Beaufort county, nor in any county, except as above stated.

43

At the time the bill of sale mentioned was executed, the company to which it was made, and the parties interested in the steamer, had full verbal, but no other notice of the said mortgages except the recording of them in the custom house.

The company named, at the time of the execution of the bill of sale mentioned, got possession of the steamer, and remained in possession of her until some time in the month of January, 1884, and on the 18th of that month it passed a resolution declaring that it surrendered the steamer, as far as it could, to the mortgagees.

The defendant R. T. Hodges was the sheriff of the county of Beaufort, and on the 12th day of January, 1884, he had in his hands sundry executions against the said company, and by virtue of them, levied upon and took possession of the steamer. At that time it was in the actual possession of the company. The said sheriff, by virtue of said executions and levies, held possession of the steamer until the 1st day of February, 1884.

On the last named day, the sheriff of Pitt county, by virtue of an order of the Clerk made in this action, seized said steamer and held the same three days, and then delivered her to the plaintiff.

After the sheriff of Pitt county so seized the steamer, the defendant Hodges, as sheriff, had in his hands sundry other executions against said company, and on the said 1st day of February, 1884, "*levied*" them on the steamer, but did not take her from the possession of the said sheriff of Pitt. Before the defendant Hodges, sheriff, levied the executions in his hands upon the steamer, the attorney of the plaintiff notified him of the mortgages named and the sum of money due, secured by them.

The said transportation company was made a party defendant to the action, as was, also, William B. Rodman, Jr., as receiver of that company, he having been appointed such receiver in some appropriate proceeding, and they filed an answer, contesting the validity of the mortgages as against them, upon the ground that the vessel was engaged solely in the internal commerce of this State, and was not subject to the laws of the United States; and,

also, that they had not been properly acknowledged and recorded as required by the laws of the United States, and the further ground, that they were not registered as required by the laws of this State, and were therefore ineffectual as against creditors and subsequent purchasers. The parties agreed upon the facts substantially as above stated, and submitted the case to the Court for judgment.

The Court gave judgment as follows:

"That plaintiff is not entitled to the possession of the steamboat mentioned in the proceedings, and it appearing that said boat has by proceedings in this cause been put in the possession of the plaintiff, it is ordered that plaintiff deliver the said boat to William B. Rodman, Jr., the receiver appointed by this Court to receive the same, or, on his failure to do so, that he pay to said receiver seven thousand dollars, the penalty of the bond given by him in this action, to be discharged upon the payment in default thereof, of the value of said boat and other articles of tackle therein mentioned.

"Provided, however, if plaintiff shall pay to said receiver the amount of the judgment against Merchants' and Farmers' Transportation Company, levied by the sheriff of said county on said boat, and the interest and costs thereon, and the costs of this action, then the judgment for the restoration of said boat and for the penalty of said bond shall be discharged."

The plaintiff excepted and appealed to this Court, as did also the receiver.

*Mr. George H. Brown, Jr.,* for the plaintiff.
*Messrs. W. B. Rodman & Son* and *C. F. Warren,* for the defendant.

MERRIMON, J. (after stating the facts as above). The record in this case, in different aspects of it, presents several interesting questions that were ably argued by the counsel on both sides. We deem it necessary to decide but two of them, and these are:

1st. Was the steamer "Edgecombe" subject to the laws of the United States regulating domestic commerce? 2nd. If so, were the two mortgages of that vessel, under which the plaintiff claims title to it, proven as required by law?

In our judgment, both these questions must be answered in the affirmative.

The Constitution of the United States, in prescribing and defining the powers of Congress in Article 1, §8, provides among other things, that it shall have power "to regulate commerce with foreign nations, and among the several States, and with the Indian Tribes."

It is well settled, that the power thus conferred, in the respects specified, is paramount and exclusive. Necessarily incident to that power, is that to regulate navigation, and this includes ships, steamboats, sail and all manner of vessels however propelled, that go upon navigable waters that flow from one State into another, and out of a State into the sea, coastwise, and upon the sea, to and from foreign countries. The power to regulate such commerce, implies necessarily the incidental power to regulate the essential instrumentalities incident to it.

Such power, within its just scope and purpose, is very thorough in in its effectiveness. It is fundamental, and its object is to develope, promote, and protect the commerce of a great people, for the common good. In accomplishing this end, it is not confined, as to vessels that go upon navigable waters, at home or abroad, simply to prescribing methods and rules of navigation, and transportation, but it extends to giving them distinctive national character, wherever and in whatever service they may lawfully be, invested with rights, privileges and obligations, extending to the owners and all persons having an interest in them—to prescribing the methods of sale and transfer of them, or any property interest in them, and to jurisdiction over them for all purposes, germane to such commerce.

It would be a supererogatory service to undertake here to show why this is, and ought be so, because it is so settled by a vast

number of judicial decisions, both Federal and State, and we content ourselves with citing a few of them.  *Gibbons* v. *Ogden,* 9 Whea, 1; *Brown* v. *State of Maryland,* 12 Whea, 409; *The License Cases,* 7 How., 283; *South Carolina* v. *Georgia,* 93 U. S., 4; *Hall* v. *DeCuix,* 95 U. S., 485; *Ferry Co.* v. *St. Louis,* 107 U. S., 365; *White's Bank* v. *Smith,* 7 Wall., 646; *Aldrich* v. *Ætna Co.,* 8 Wall., 491; *Mitchell* v. *Steelman,* 8 Cal., 363; *Fontaine* v. *Beers,* 19 Ala., 722; *Shaw* v. *McCandless,* 36 Miss., 296; 6 *Myers Fed. Dec.* §1023, et seq.; *Desty's Shipping and Admiralty,* 1—5.

Congress has exercised the power mentioned in many ways and respects.  In respect to vessels of a prescribed tonnage engaged in domestic commerce, it has passed laws providing for their *enrolment* in the Custom House of the collection district in which their respective owners reside, and such enrolment renders them vessels of the United States, and confers upon them national character, rights, privileges and obligations as domestic vessels.  *Rev. Stat. U. S.* §4311, *et seq.*

It is the *enrolment* of a vessel that may engage in commerce, and not the character of the particular service it may do, that gives it distinctive national character, and renders it subject to the laws of the United States, and brings it within the jurisdiction of that authority.  Such enrolment and a *licenses* confer the right to go from port to port, to engage in trade, and carry passengers and freight between the several States; such national character goes with and is part of the vessel, wherever it may lawfully go, no matter in what service.  *Gibbons* v. *Ogden, supra.*

Congress has no power to regulate or interfere with the purely internal commerce of a State, and a vessel engaged solely and exclusively in such commerce, is subject to its laws and control, if the owner chooses to so use it without enrolment under the laws of the United States.  But if the owner shall enroll his vessel, as he may do at any time, certainly in the absence of any State statute regulating vessels engaged in such internal commerce, it at once ceases to be a vessel of the State and devoted

exclusively to its internal commerce; it then and thereby takes on the character of a vessel of the United States, with the right to go out of the State and engage in interstate commerce at the will of the owner, if he chooses to obtain a proper license, and by such enrolment it becomes subject to the laws of the United States, no matter where it may be, or in what service it may be employed. An enrolled vessel engaged solely in the internal commerce of a State, does not necessarily thereby put off or destroy its national character, and cease to be a vessel of the United States, certainly while it goes upon navigable waters that flow into other States, or into the sea. It would be most disorderly and confusing and highly injurious to commerce in various ways, and the stability of rights to and in vessels, to allow their owners respectively to impress upon them the character of a vessel of the State, or the United States, at their pleasure. Such character must arise and be established by proper legal authority.

Now, the vessel in question was duly enrolled at the customhouse in New Berne, its home port. By such enrolment, she certainly became a vessel of the United States, and subject to the laws of that government. If before that time, she had been a vessel of this State, engaged exclusively in its internal commerce, and was subject to its laws, by such enrolment it put on the national character, and ceased to be in character and legal contemplation, a vessel of the State, employed exclusively in its internal commerce; it became a vessel of the United States engaged exclusively, according to the facts as they appear, in the internal commerce of this State, with the right to take employment in interstate commerce at the will of her owner. This is not an impossible, but an entirely practicable thing to be done. A vessel solely employed in the internal commerce of a State may be, but it is not necessarily, a vessel of that State. A vessel enrolled in New York, having proper authority, might come into the navigable waters of this State, and engage for years exclusively in its internal commerce, but it would not thereby become a vessel of this State, in contemplation of law, because its character

in such case would be established by law, and not by the fact of the particular service, or its nature. It seems to us, therefore, manifest that the vessel in controversy was, in contemplation of law, a national vessel, and subject to the laws of the United States, applicable in such cases.

It is provided by *Rev. Stat.*, U. S., §4192, that "no bill of sale, mortgage, hypothecation or conveyance of any vessel, or part of any vessel, of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation or conveyance is *recorded in the office of* the collector of the customs where such vessel is registered or enrolled."

It is plainly the purpose of this statute to regulate the methods of conveyance and transfer of vessels, and property interests in them, of the United States. The power of Congress to pass such laws, and the effect of them, has been much questioned. The validity of the statute just cited, and its effect as a registration law, have been repeatedly drawn in question, but it has been upheld as consistent with the constitution by many decisions, both State and Federal. The Supreme Court of the United States has repeatedly held that it is valid, and its validity may be treated as settled by the highest judicial authority.

It has likewise been held that recording a mortgage under this statute, supercedes State registration laws as to the place of registration, and gives it priority over a subsequent purchaser, or a subsequent attachment or like lien. *White's Bank* v. *Smith*, 7 Wall., 646; *Aldrich* v. *Ætna Ins. Co.*, 8 Wall., 491; *Shaw* v. *McCandless*, 36 Miss., 296; *Fontaine* v. *Beers*, 19 Ala., 722; *Mitchell* v. *Steelman*, 8 Cal., 363; *Perkins* v. *Emerson*, 59 Me., 319; 1 *Parson's Shipping and Admiralty*, 60, 63; *Desty's Shipping and Admiralty*, §65.

The defendant's counsel relied partly on the case of *Wiswall* v. *Potts*, 5 Jones' Eq., 184. In that case it was held, that a steamboat used exclusively for the purposes of the internal com-

merce of a State, need not be enrolled in the office of the collector of customs, as required by the statute of the United States. This much is true, but it is not true that such a vessel cannot be a vessel of the United States, nor is it true that the mortgage of an enrolled vessel, used exclusively in the internal commerce of a State, need not be recorded in the custom house.

In that case the steamboat had been enrolled. The mortgage of her, however, had not been recorded in the custom house, but had been registered as required by the laws of this State, and the court held such registration sufficient. If this mortgage had been recorded in the custom house, or if a subsequent purchaser, without notice, had interposed his right to the vessel, a different question would have been presented.

We feel called upon, however, to say in this connection, that we cannot concur in the reasoning of the late Chief Justice Pearson in parts of the opinion in that case. For example, he says : "It is the fact that a boat trades to two or more of the States, or to a foreign country, which makes it a vessel of the United States, and the act of registration in the custom house is an *incident* necessary to give it the privileges conferred thereby." This is certainly an inadvertence. The registration or enrolment of the vessel is necessary to give the privileges so conferred, but it is necessary also to give the vessel national character. The statute of the United States, (*Rev. Statutes, U. S.*, §§4131, 4311) expressly provides and declares, that vessels registered and enrolled as therein required and "no others, shall be deemed vessels of the United States." And it is so laid down in plain terms in *Gibbons* v. *Ogden, supra.*

The inadvertence or misapprehension seems to have grown out of the supposition that a vessel engaged exclusively in the internal commerce of a State is necessarily a part of it and subject to the laws of the State. This, as we have seen, is so, only so long as the owner of such vessel chooses not to enroll it under the laws of the United States. This he may do when he will, certainly, in the absence of any law of the State regulating its internal commerce and vessels engaged exclusively in it.

The mortgages in question were acknowledged before the Clerk of the Superior Court of Beaufort county, and recorded in the custom house at New Berne, where the vessel was enrolled. It is objected, that such acknowledgment was not sufficient, because it was not taken by a justice of the peace, a *notary public*, or a commissioner of the Circuit Court of the United States, as required by the *Rev. Stats. U. S.*, §§1778 and 4193, which latter section, after providing how mortgages and other conveyances of vessels or any interest in them shall be recorded, provides, "but no bill of sale, mortgage, hypothecation, conveyance or discharge of mortgage, or other incumbrance of any vessel, shall be recorded unless the same is duly acknowledged before a notary public, or other officer authorized to take acknowledgment of deeds."

We think this objection is not well-founded, because the Clerk of the Superior Court was, by virtue of his office, a notary public, and the taking of the acknowledgment must be referred to the exercise of his notarial authority.

*The Code*, §3306, provides that "the Clerks of the Superior Courts may act as *notaries public* in their several counties, by virtue of their offices as clerks, and may certify their notarial acts under the seals of their respective courts." This is a public statute of which everybody is presumed to have knowledge, and of which the courts of the United States, as well as the courts of this State, take judicial notice, and whenever it appears that the Clerk has done an official act that the law requires to be done by the exercise of notarial power, it is treated as done in the exercise of such authority. And so, in this case, as soon as it appeared to the Court that the Clerk had taken the acknowledgment of the mortgages of the vessel, to be recorded in the custom house, the Court at once recognized the exercise of notarial authority, because the Clerk had such authority, and he did an act that required its exercise. The nature of the act done, sufficiently indicated by what authority it was done, and all persons are presumed to have knowledge of it. It was said on the argu-

ment that the Clerk did not sign the certificate of acknowledgment as notary public, but as Clerk. It was not necessary, indeed not strictly proper, that he should so sign it, because his notarial authority was incident to his office as Clerk. He took and certified the acknowledgment under his hand as Clerk of the Superior Court, and under the seal of his court, in strict compliance with the statute, and his act was as complete and binding as any similar act he could do.

The case of *DeCourcy* v. *Barr, Busb. Eq.*, 181, relied upon by the defendant's counsel, does not apply here. In that case the notary public in New York, had no authority to take the acknowledgment of deeds executed by *residents of this State*; he was only authorized by the statute to take such acknowledgments of *non-residents*. In this case, the Clerk had authority and exercised it in the way the statute allowed him to do. *Carpenter* v. *Dexter*, 8 Wall., 513; *Shultz* v. *Moore*, 1 McL., 520.

It is unnecessary to inquire whether the Clerk could, as Clerk, have taken the acknowledgment, because he had notarial authority, and, as we have seen, it must be taken that he exercised it.

Upon the " case agreed " and submitted to the Court, the plaintiff is entitled to have the vessel in question as mortgagee.

There is error. The judgment of the Superior Court must be reversed and judgment entered here for the plaintiff.

Error.                              *Judgment accordingly.*

---

DEFENDANT'S APPEAL.

MERRIMON, J. This is the appeal of the defendant, *Receiver* in the above action.

The receiver appealed upon the ground that the Court directed that the judgment for the restoration of the vessel and the penalty, should be discharged when and if the plaintiff should pay

the amount, including interests and costs, of the judgments referred to in the judgment from which the appeal was taken.

This is an action at law, and no equitable relief is demanded, nor do the pleadings present a case in which it might be granted. It may turn out that the vessel is worth more money than the mortgagee's debts, but the receiver, if he is entitled to any surplus, can protect himself in another action.

The decision of this court in the plaintiff's appeal in this case is conclusive against the appellant. His appeal was unnecessary and improvidently taken, and must be dismissed.

*It is so ordered.*