This is an action in the nature of a quo warranto, brought by the Attorney-General of the State of North Carolina on the complaint of the relator, a citizen of this State, and a resident, taxpayer, and qualified voter of the city of Salisbury, to oust the defendant from the office of city councilman of the city of Salisbury, on the ground that defendant now unlawfully and wrongfully holds and exercises said office. C. S., 870 (1)-871.
The agreed statement of facts is as follows: "(1) That the relator, T. W. Grimes, Jr., is a citizen, taxpayer, and qualified voter of the city of Salisbury, North Carolina.
"(2) That leave was obtained from the Attorney-General to institute thisquo warranto proceeding, and relator gave the proper undertaking within the time required by law, and said proceeding was instituted by the issuance of summons and copy of the complaint being served on the defendant on 28 September, 1933, all within the time required by law.
"(3) That the said Haden C. Holmes gave the proper undertaking within the time required by law and before filing his answer in this cause, and that defendant's answer was duly filed within the time allowed by law.
"(4) That Haden C. Holmes was duly elected a member of the city council of the city of Salisbury, North Carolina, in the municipal election held in May, 1933; pursuant to said election, on 1 July, 1933, the defendant was duly inducted into said office of city councilman, began the performance of his duties as such, and since said date has held and exercised said office, and continues so to do. *Page 295 
"(5) That on 1 July, 1933, while the defendant was holding and exercising the office of city councilman, there being a vacancy in the office of city manager, the said Haden C. Holmes was appointed by the city council to do and perform the duties of city manager, and began the performance of his duties as such and continues so to do.
"(6) That the said Haden C. Holmes is now acting and performing the duties of the office of city councilman and city manager, and is receiving as compensation the sum of $250.00, with an additional $15.00 per month for the use of his automobile while engaged in the performance of his duties, but that he is not receiving any salary as city councilman.
"(7) That the 1933 session of the General Assembly of North Carolina ratified an act entitled An `Act to Amend Chapter Two Hundred and Thirty-one of the Private Laws of One Thousand Nine Hundred and Twenty-seven of North Carolina, Relating to the Office of City Manager of the City of Salisbury,' said act being fully set forth in defendant's further answer; that no notice by publication was given before the introduction and passage of said act.
"(8) That the city charter and all supplementary acts, whether public or private, amendatory thereof are hereby made a part of this agreed statement of facts.
"(9) That a former member of the city council, during the last term of office of the city council, performed the duties of councilman, mayor and city manager at one and the same time.
"(10) That Prior to 1 July, 1933, the said Haden C. Holmes was a member of the city council of the city of Salisbury, North Carolina, and received as compensation for his services as city councilman the sum of $50.00 per month up to and including the month of April, 1933, but that he did not receive any compensation as city councilman after the ratification of chapter 175, Private Laws of 1933; that on 15 November, 1932, while the said Haden C. Holmes was a member of the city council, he was appointed to perform the duties of city manager at a salary of $200.00 per month, in addition to the salary received as city councilman up to May, 1933, but that for the months of May and June, 1933, he did not receive any salary as city councilman, and has not since that date received any salary as city councilman.
"Dated 17 February, 1934. George R. Uzzell, Attorney for Plaintiff. Hayden Clement, Attorney for Defendant."
The judgment of the court below is as follows: "This action having been called for trial, and it appearing to the court that plaintiff and defendant have waived a trial by jury and agreed upon an agreed statement of facts; and the court finding as a fact that the defendant Haden C. Holmes was duly and lawfully elected a member of the city council *Page 296 
at the last municipal election, and duly qualified as a member of said council on 1 July, 1933, and since said date has been lawfully performing the duties of his office as a member of said city council, together with such additional duties as have been imposed upon him by the council; and the court being of the opinion that the said Haden C. Holmes is lawfully entitled to continue to exercise and perform the duties of his office as a member of the city council, together with the additional duties of city manager delegated to him by the city council.
"It is now, on motion of Hayden Clement, counsel for the defendant, adjudged that the said Haden C. Holmes is lawfully entitled to continue to hold the office of a member of the city council and to do and perform the additional duties of city manager imposed upon him by said council, together with such franchises, privileges, and emoluments connected therewith; and that the plaintiff be denied the relief prayed for in the complaint, and that the plaintiff pay the costs of this action, to be taxed by the clerk. Wm. F. Harding, Judge Presiding."
The Plaintiff excepted and assigned error to the judgment, as signed, and appealed to the Supreme Court.
The question involved: Is it a valid exercise of legislative power for the Legislature to enact that: In the event the city manager of a municipal corporation shall be sick, absent, or otherwise unable to perform the duties of his office, or should the position be vacant, the city council may delegate the duties of city manager to one of its members, to be performed ex officio as mere auxiliary duties? We think so, under the facts and circumstances of this case.
Article XIV, section 7, of the Constitution of North Carolina, is as follows: "No person who shall hold any office or place of trust or profit under the United States, or any department thereof, or under this State, or under any other state or government, shall hold or exercise any other office or place of trust of profit under the authority of this State, or be eligible to a seat in either house of the General Assembly: Provided, that nothing herein contained shall extend to officers in the militia, justices of the peace, commissioners of public charities, or commissioners for special purposes."
In Groves v. Barden, 169 N.C. 8 (9) speaking to the subject is the following: "The line between `offices' and `places of trust of profit' within the meaning of the Constitution has not been clearly marked, principally because they approach each other so closely, and are in all essential features identical. *Page 297 
"In Doyle v. Raleigh, 89 N.C. 133, the Court, speaking of this question, says: `It is apparent from the association that "places of trust or profit" are intended which approximate to but are not offices, and yet occupy the same general level in dignity and importance. The manifest intent is to prevent double office-holding — that offices and places of public trust should not accumulate in any single person — and the super-added words of "places of trust or profit" were put there to avoid evasions in giving too technical a meaning to the preceding words,' and this was affirmed in State ex rel. Wooten v. Smith, 145 N.C. 476, the Court adding in the latter case: `The most important characteristic which distinguishes an office from a public agency is that conferring of the office carries with it a delegation to the individual of some of the sovereign functions of the Government. In this respect, the terms "office" 
and "places of trust" as used in our Constitution are synonymous. Doyle v.Raleigh, 89 N.C. 136; Barnhill v. Thompson, 122 N.C. 495.'"
In the above-cited case it was held that a rural mail carrier was an officer. Under the doctrine announced in Hoke v. Henderson, 15 N.C. 1, a public office was property and, although the General Assembly could regulate the fees and emoluments thereof, it could not take away the entire or major part of the salary of a public officer.
Hoke v. Henderson, supra, was overruled in Mial v. Ellington,134 N.C. 131, so that now the fees, salaries and emoluments of all officers, except the salaries of the judges and certain other officers, set forth in the Constitution, are absolutely subject to legislative control. Under that decision, an officer appointed for a definite time to a legislative office has no vested property therein or contract right thereto of which the Legislature cannot deprive him.
The people of the city of Salisbury adopted Part 4, Plan D, Mayor, City Council and City Manager, chapter 56, "Municipal Corporations." C. S., 2896, is as follows: "The city council shall appoint a city manager, who shall be the administrative head of the city government, and shall be responsible for the administration of all departments. He shall be appointed with regard to merit only, and he need not be a resident of the city when appointed. He shall hold office during the pleasure of the city council, and shall receive such compensation as it shall fix by ordinance."
C. S., 2897, is as follows: "The city manager shall (1) be the administrative head of the city government; (2) see that within the city the laws of the State and the ordinances, resolutions and regulations of the council are faithfully executed; (3) attend all meetings of the council, and recommend for adoption such measures as he shall deem expedient; (4) make reports to the council from time to time upon the affairs of the *Page 298 
city, keep the council fully advised of the city's financial condition and its future financial needs; (5) appoint and remove all heads of departments, superintendents, and other employees of the city."
In Town of Saluda v. County, of Polk, ante, 180 (187), we find: "It will be seen by the Constitution of the State that almost unlimited power is given the General Assembly in reference to the creation and abolishing of counties, cities, and towns of the State."
The General Assembly, Private Laws 1933, ch. 175, passed an act relative to the position of the city manager of the city of Salisbury. A copy of the same is made a part of the agreed statement of facts. The material part is as follows: "In the event the city manager shall be sick, absent from the city, or otherwise unable to perform the duties of his office, or should the position of city manager be vacant, the council may delegate the duties of the city manager to one of its members, to be performed ex officio as mere auxiliary duties, and designate one of its members to perform such duties, and the person so designated shall have all of the powers and authority of the city manager while he shall serve in that capacity, and shall receive such compensation as the council shall determine, but shall receive no salary as a member of the city council."
Conceding that the city manager is an officer in the meaning of the Constitution, yet we think the duties of his office in the cases set forth in the act for the time being can be performed ex officio by one of the council "as mere auxiliary duties."
If the General Assembly can abolish, they can subject to the limitations of the Constitution, place additional duties on officers of a municipality.Chief Justice Ruffin says, Ruffin says, in Troy v. Wooten, 32 N.C. 377
(379-380): "The only provision in that instrument which has any bearing on the question is that in the 25th section, that no person shall hold more than one lucrative office at any one time. But that does not restrain the Legislature from abolishing an office and transferring its duties, so as to attach them to another office, when it shall seem to the General Assembly to promote the public weal, and when the several duties are not in their nature incompatible. . . . It therefore answers an important purpose in the public economy, by uniting the duties and fees in one office, to induce fit men to take the place. . . . For, while it is not to be presumed, on the one hand, that the Legislature will create needless offices, so, on the other, it cannot be presumed that it will, with the intent to evade a constitutional provision, impose on one officer more duties than by reasonable diligence he can discharge."
In the Mial case, supra, at page 154, is the following: "When the State employs officers or creates municipal corporations as the mere agencies of government, it must have the power to discontinue the agency whenever it comes to be regarded as no longer important. `The framers *Page 299 
of the Constitution did not intend to restrain the State in the regulation of their civil institutions adopted for internal government.' They may, therefore, discontinue offices, or change the salary or other compensations, or abolish or change the organization of municipal corporations at any time, according to the existing legislative view of State policy, unless forbidden by their own Constitution from doing so." Cooley's Const. Lim. (7th Ed.), 387.
At pages 161-162: "If the people have not authorized the legislative department to parcel out their sovereignty by grants of public offices as private property, we dare not do so. The Legislature having been entrusted with the power of either electing or providing for the election of officers of legislative creation, must, as the representatives of the people, be entrusted to make such changes in the tenure, duties and emoluments of such offices as in its judgment of the public interest demands. This power having been vested in that department of the Government, it is our duty to obey and enforce the law as the `State's collected will.'" Lawrence v.Hodges, 92 N.C. 672; State ex rel. McNeil v. Somers, 96 N.C. 467;McCullers v. Commissioners, 158 N.C. 75; Borden v. Goldsboro,173 N.C. 661; State v. Wood, 175 N.C. 819. The plaintiff cites Harris v.Watson, 201 N.C. 661, which is distinguishable from the present case.
Citing a long list of authorities in Hinton v. State Treasurer,193 N.C. 496 (499), we find: "In Sutton v. Phillips, 116 N.C. at p. 504, speaking to the question, this Court said: `While the courts have the power, and it is their duty in proper cases, to declare an act of the Legislature unconstitutional, it is a well-recognized principle that the courts will not declare that this coordinate branch of the Government has exceeded the powers vested in it unless it is plainly and clearly the case.If there is any reasonable doubt, it will be resolved in favor of thelawful exercise of their powers by the representatives of the people. (Italics ours.) . . . At p. 505: It cannot be said that this act is plainly and clearly unconstitutional. The doubt, if any, must be resolved in favor of the General Assembly.'"
Plaintiff contends that the act in controversy was not passed in compliance with Article II, section 12, of the Constitution and as provided in C. S., 6106. This contention cannot be sustained.
In Cox v. Commissioners, 146 N.C. 584 (585), is the following: "The courts will not go behind the ratification of the act to ascertain whether notice has been given in accordance with section 12, Article II, of the Constitution of the State. While that section is binding upon the conscience of the General Assembly, and doubtless is intended to be observed by that body, the courts will not undertake to review the action in that respect of a coordinate department of the State Government, *Page 300 
and will conclusively presume, from ratification, that the notice has been given. Gatlin v. Tarboro, 78 N.C. 119; Brodnax v. Groom, 64 N.C. 244;Worth v. Railroad, 89 N.C. 291; Puitt v. Commissioners, 94 N.C. 709;S. v. Powell, 100 N.C. 525."
The able brief of plaintiff is gripping and persuasive, but not convincing. It is a serious matter for a court to declare an act of the General Assembly, unconstitutional. This has been done when the act is plainly and clearly so. The General Assembly is the law-making body, subject to constitutional limitations. The judicial forum would soon be an autocracy if it would attempt to legislate or overrule acts of the General Assembly, passed contrary to its views, when not unconstitutional. The policy as to the passage of the act in controversy here is for the General Assembly and not for us to determine.
For the reasons given, the judgment of the court below is
Affirmed.