Kirksey *vs.* Bates, surv.

ment of that court, as to the questions referred, be affirmed.

KIRKSEY *vs.* BATES, survivor.

1. A Notary Public is an officer known to the law merchant, and, of consequence to the common law, of which it is a part.

2. Notaries Public are authorised by the common law to provide their own seals.

3. The creation of the office of Notary Public by statute, authorises the officer to act in the form prescribed by the common law, as it is impossible for him to use the seal required by the Legislature: the right to perform notarial acts having also been recognised by several subsequent statutes.

4. The requisitions of the seal, prescribed by the act of eighteen hundred and three, must be regarded as obsolete, by the omission to declare what are the arms of the State.

Error to the Circuit court of Marengo.

Assumpsit, tried before Judge *Chapman.*

This was an action of assumpsit, on an inland bill of exchange, protested for non-payment. On the trial, an exception was taken to the notarial seal, as being insufficient to establish the protest, because it did not appear to have been engraved with the arms of the State, as directed by the statute; and because, instead of being subscribed with the name of the notary, it contained the initials of his name only. The objection was overruled, and a verdict rendered for plaintiff.

7 P. 67

Kirksey *vs.* Bates, surv.

Plaintiff here assigned for error, the admission of the protest as evidence.

*Street & Thornton*, for plaintiff in error.

*Erwin*, contra.

COLLIER, C. J.—By the act of eighteen hundred and three, entitled "an act concerning notaries public," (Aik. Dig. 326,) the Governor is invested with power to appoint a competent number of notaries public, of persons resident within the then territority, not to exceed in number more than two, to reside in any one county. The *notaries* thus appointed, are authorised to administer oaths or affirmations according to law, in all matters belonging or incident to their notarial office—to receive proof or acknowledgement of all instruments of writing relating to commerce or navigation—such as bills of sale, bottomries, mortgages, and hypothecations of ships, vessels or boats, charter-parties of affreightment, letters of attorney, and such other writings as are commonly proved or acknowleged before notaries within the United States; and also to make declarations, and testify the truth thereof under their seal of office, concerning all matters by them done in their respective offices.

The act, then, after providing for the registry of the official acts of *notaries*, the certification of copies, and the deposit and safe-keeping of their registers upon the death of a notary, proceeds as follows: "Every notary shall provide a public notarial seal, with which he shall authenticate all his acts, instruments and attestations; on which seal shall be engraved the arms of this territory,

Kirksey *vs.* Bates, surv.

and shall have for legend, the name, surname, and office of the notary using the same, and the place of his residence." The remaining section merely prescribes the oath to be taken, and the bond to be executed by a notary. The act of eighteen hundred and fourteen, authorises a justice of the peace to discharge the duties of a *notary public,* where *he* is absent or incapable of acting. The act of eighteen hundred and nineteen, provides an oath and bond for notaries, and changes the mode of their appointment, so that now the judge of the County court, and any two of the commissioners of revenue and roads, shall recommend to the Governor a proper number of persons to act as notaries public in their county, whose duty it shall be to commission the persons recommended—(Toulmin's Dig. 676 ; Aik. Dig. pages 86, 326, 327.) These are the only statutes in regard to the appointment and qualification of notaries.

A notary public is an officer long known to the civil law, and designated as *registrarius, actuarius,* or *scrivarius.* Anciently, he was a scribe, who only took notes or minutes, and made short drafts of writings and instruments, both public and private. At this day, in most countries, a notary public is one who publicly attests deeds or writings, to make them authentic in another country ; but principally in business relating to merchants. In England, several statutes have at different periods been enacted, regulating the appointment of that officer, and to some extent defining his duties—(41 Geo. III, c. 79 ; 3 and 4 W. 4 ch. 70.) But none of these statutes prescribe the particular seal to be employed by a notary, so far as we have been able to ascertain their terms.

Kirksey *vs.* Bates, surv.

A *notary public,* it has been said, is an officer known
to the law of nations;—hence his official acts receive cre-
dence, not only in his own country, but in all others in
which they are used as instruments of evidence.   He is
certainly recognised by the law merchant, and his acts,
to some extent, are indispensable to its efficacy.   As in
the case of a foreign bill, a protest, is necessary to shew
its dishonor by the refusal of the drawee to accept or pay
it, and can only be excused, by proving either that the
drawer had no effects in the hands of the drawee, and
no reasonable expectation that the bill would be honor-
ed, or that the drawer has waived its necessity by a
promise to pay, under a knowledge of the circumstances
—(Legge vs. Thorpe, 12 East's R. 171.)

When a statute creates an office previously known to
the *common law,* for the purpose of ascertaining the du-
ties of the officer, and the manner in which they are to
be exercised, reference must be had to *that law* in the ab-
sence of legislation.   Let it be supposed, then, that the
legislature had merely provided for the *appointment and
qualification of notaries public,* without attempting to de-
fine their powers, or to declare how their acts were to
be authenticated, and it cannot be doubted that *notarial
acts,* would have been required to be done, according to
the forms used at the common law.   Now, according to
that law, a *notary* was required to provide his own seal,
with such inscription as his judgment or fancy might
dictate.   But let us suppose farther, that the legislature
have created such an office, and directed the officer to per-
form his duties in a particular manner, the practicabili-
ty of which, depends upon some act first to be done by

that body, shall its omission deprive the officer of all authority? It is unnecessary to answer this question. For the legislature, in all its enactments since eighteen hundred and three, in regard to *notaries*, treat them as officers invested with all power which ordinarily belong to their offices. And even as late as eighteen hundred and twenty-eight, it was enacted, that "The protest of a notary public, which shall set forth a demand, refusal, non-acceptance or non-payment of any inland bill of exchange, or other protestable security, for money or other thing, and that legal notice, expressing in the said protest, the time when given of such fact or facts, was personally, or through the post office, given to any of the parties entitled by law to notice, shall be evidence of the facts it purports to contain, and entitle the holder of such security to the damages to which, by law, he may be entitled."

Why was this law enacted by the Legislature, if it did not suppose that our *notaries public* were invested with all powers appertaining to their offices? Yet this could not be, if it were necessary to the validity of their acts, that they should be attested by such a seal as they are directed by the act of eighteen hundred and three, to provide. Our statute book does not inform us what device has been adopted to represent the arms of the territory of Mississippi or Alabama, or of this State; and the public acts of the executive branch of the government (if competent to the task,) are alike silent.

It is however, argued for the plaintiff, that the inscription made upon the seal of the State, must be taken to be the arms of the State. Strange as it may seem,

the only legal provision extant, in regard to a public
seal in either of the territories to which we have referr-
ed, is to be found in an act of Congress of seventeen hun-
dred and ninety two, in regard to the territory north
west of the river Ohio, which, by a subsequent act was
applied to the Mississippi and Alabama territories. The
provision referred to, is as follows : " The secretary of
state shall provide proper seals for the several and re-
spective public offices in the said territories," (Turner's
Miss. Dig. p. 40, sec. 8.) Here, we discover no particu-
lar seal is prescribed, but a mere direction is given to
provide a seal for *each public office* By the twelfth sec-
tion, fourth article of our Constitution, it is ordained,
that " there shall be a seal of this State, which shall be
kept by the governor, and used by him officially ; and
the present seal of the territory shall be the seal of the
State, until otherwise directed by the General Assembly."
This is all we can find in relation to a seal. What is
represented by its impression, we are not informed,
otherwise than by its inspection. By a public ceal, we
legally understand, an impression made of some device,
by means of a piece of metal or other hard substance,
kept and used by public authority. What that impres-
sion is, unless prescribed by law, or other public act,
can not be known but in the way we have mentioned.
*Arms*, in the sense in which they are used in the act of
eighteen hundred and three, in regard to notarial seals,
clearly mean the *armorial ensigns* of a State or political
community, intended to distinguish it from others, which
is usually transferred to its national flag or banner.—
Yet, perhaps a public flag can not always be considered

Kirksey *vs*. Bates, surv.

as a true indication of the arms of the country to which it belongs ; for most countries have two banners—the one borne by vessels of war, and the other, by those engaged in commerce.

In the days of chivalry and knight errantry, and at the present time, where distinctions are recognised by law, between wealth and other adventitious influences, and property or weakness, the adventurous and the great have adopted their *insignia*, suggested by valorous achievment, or other causes. These are called their arms or family escutcheon, and are usually engraved on their seals. Yet, does it follow, that by the mere adoption of a seal, to give solemnity or validity to contracts, the ensigns armorial of a family are also adopted, and that the device upon the seal repsesents them ? It is apprehended not.

In respect to the legend, as the engraving directed by the act can not be made, the legend is, in our opinion, unnecessary.

Our conclusion, from the best examination we can give the question presented by the counsel at bar, is—

1- That a notary public is an officer known to the law merchant, and of consequence, to the common law, of which it is a part.

2. That notaries public were authorised, by that law, to provide their own seals.

3. That the creation of the office by statute, authorises the officer to act in the form prescribed by the common law, as it was impossible for him to use the seal required by the legislature ; the more especially as the

right to perform *notarial acts,* has been recognised by several subsequent statutes.

And lastly—that the requisition of such a seal as the act of eighteen hundred and three describes, must be considered to be obsolete, by an omission to declare what should be the arms of either of the territories or this State.

The consequence of which is, that there is no error in the record, and the judgment is affirmed.