Jan. 2,
 1906.

## Opinion of the Justices.

*According to the common law of this state, a woman cannot hold the office of notary public.*

*To His Excellency the Governor, and the Honorable Council :*

"Notaries public shall be appointed by the governor, with advice of the council." P. S., c. 18, s. 1. The question submitted under date of September 25, 1905, whether a woman is qualified to fill the office of notary public in this state, therefore involves the power of the executive to appoint such a person notary public, and is, in that aspect, one which it is our constitutional duty to answer, because it is a question of law which the governor and council may be called upon to determine in the performance of the duties of their office. *Opinion of the Justices,* 67 N. H. 600, 601. As the question is framed, however, it relates to the personal competency to hold the position of a class, individuals among whom, it may be presumed, may desire such an appointment.

Conceiving that there might be such persons and considering the possibility that such an application for appointment might be the occasion of your request, and not understanding that there was need of an immediate reply, we have delayed returning our answer in order to afford any persons who might desire it an opportunity to be heard before us. We were inclined to this course because the conclusions reached by this court in 1890, upon the application of a woman to be admitted to practice as an attorney, seemed to us conclusive upon the present question, and we desired, if possible, to have the aid of counsel if the question were to be reopened. We have not been favored with any argument upon the law, and it does not seem necessary to do more than to state the conclusions then reached after a most exhaustive examination of the authorities. It was then held that at common law, in the absence of enabling legislation, a woman cannot hold a public governmental office. "By our common law, women do not vote in town-meeting. The reason is, that voting is an exercise of governmental power. For the same reason, and by the same law, they do not hold public office." *Ricker's Petition,* 66 N. H. 207, 254. In that case a distinction is taken between public and private office and between office and employment, and the conclusion reached, contrary to authorities in other jurisdictions cited in the case, that although an attorney-at-law is an officer of the court, his employment is not a public governmental office to which

the common-law disability of women attaches. Although authorities to the contrary of the latter proposition may be found, there seems to be little, if any, controversy over the main proposition, that at common law women are disabled to take part in governmental action, and that to enable them to 'do so affirmative legislation is necessary. Note, 38 L. R. A. 215. Whether the progress of the age requires that this, as well as other disabilities of the common law with which women have been burdened, should be removed, is not a question for either the executive or the judicial departments of the government. The sole question here is whether a public notary, or notary public, is a public officer exercising some part, however small, of governmental power, executive, legislative, or judicial.

"An office, as defined by Blackstone, is a right to exercise a public or private employment, and to take the fees and emoluments thereunto belonging, whether public, as those of magistrates, or private, as bailiffs, receivers, and the like. 2 Bl. Com. 36. And it is laid down 'that a public officer is one who has some duty to perform concerning the public ; and he is not the less a public officer when his duty is confined to narrow limits, because it is the duty, and the nature of that duty, which makes him a public officer, and not the extent of his authority.' 7 Bac. Abr. 280 ; Carth. 479. And we apprehend that it may be stated as universally true, that where an employment or duty is a continuing one, which is defined by rules prescribed by law and not by contract, such a charge or employment is an office, and the person who performs it is an officer." *Shelby* v. *Alcorn*, 36 Miss. 273, 288, 289,— 72 Am. Dec. 169, 172; *Ricker's Petition*, 66 N. H. 207, 232. "An office is a public station or employment, conferred by the appointment of government. The term embraces the idea of tenure, duration, emolument, and duties." *United States* v. *Hartwell*, 6 Wall. 385, 393. " The term ' office ' implies a delegation of a portion of the sovereign power to, and possession of it by, the person filling the office; and the exercise of such power within legal limits constitutes the correct discharge of the duties of such office. The power thus delegated and possessed may be a portion belonging sometimes to one of the three great departments, and sometimes to another; still it is a legal power, which may be rightfully exercised, and in its effects it will bind the rights of others, and be subject to revision and correction only according to the standing laws of the state." *Opinion of the Justices*, 3 Green. 481, 482; High Ex. Rem., *s.* 625. See note, 72 Am. Dec. 179–189.

Tested by these rules, the position or place of notary public is clearly a public office. The appointment is made by the govern-

ment for a fixed term, and the duties and powers of the place are prescribed by law.    Every notary public has, in addition to the usual powers of the office, the powers of a justice of the peace in relation to depositions and the acknowledgment of deeds and other instruments and the administering of oaths.   P. S., c. 18, ss. 1, 2.   The notary's certificate of protest under his official seal is evidence of the facts stated in the protest and of the notice given to the drawers or indorsers.   *Ib.*, s. 3.   His records are public records which, when he dies or becomes insane, the law requires to be deposited in the archives of the state.    The office is of very ancient origin, and has been here recognized as public from a very early day.    The Cutt code (1679–80) provided for the punishment of any "notary or keeper of public records," for the destruction or alteration of "any such record or writing of concernment committed to his keeping and trust," and provided among other punishments that "such corrupt officer shal lose his office."    1 N. H. Prov. Laws (Batch. ed.) *p.* 19.    In 1802, the powers of notaries were enlarged by giving to them certain powers of justices of the peace, and provision was made for the preservation of their records in the office of the secretary of state (Laws, *ed.* 1805, *p.* 96) ; while in 1829 it was provided that "all public notaries . . . shall hold their office subject to be removed by the senate upon an impeachment, or by the governor with the consent of the council, on the address of both houses of the legislature, and shall be under oath for the faithful performance of the duties of the office.   Laws, *ed.* 1830, *p.* 536.   No ground is perceived upon which it can be urged that in this jurisdiction the place of a notary is merely a public employment or a private office ; and the distinction under which Mrs. Ricker was admitted to practice as an attorney will not permit women to hold the office of public notaries.

    That a notary public holds a public office, is the holding of the authorities elsewhere.    "That a notary public is a public officer, I do not think to be open to serious doubt.    He is one of the 'public officers of this state' concerning whom chapter V of the Revised Statutes treats, and he is therein placed 'in the class of judicial officers.'    The office of a notary public must be filled by appointment of the governor of the state, with the consent of the senate.   The appointee, before he enters upon the duties of his office, is required to take and file an oath. . . .   His term of office is fixed by law. . . .   All their powers are defined by law, and their acts within their legitimate sphere have force and solemnity, because having the express authorization and sanction of statute. The very designation of 'notary public' indicates a relation which the incumbent of the office sustains to the body politic.   It is

impossible to regard him as other than a public officer." *People* v. *Rathbone*, 145 N. Y. 434, 437. For other authorities to the same effect, see *Commonwealth* v. *Haines*, 97 Pa. St. 228,—39 Am. Rep. 805; *Smith* v. *Bondurant*, 74 Ga. 416,—58 Am. Rep. 438; *Kirksey* v. *Bates*, 7 Port. 529,—31 Am. Dec. 722; *Governor* v. *Gordon*, 15 Ala. 72; *Teutonia etc. Co.* v. *Turrell*, 19 Ind. App. 469,—65 Am. St. Rep. 419; *State* v. *Clarke*, 21 Nev. 333,—37 Am. St. Rep. 517; *Britton* v. *Niccolls*, 104 U. S. 757, 766; Mech. Pub. Off., *s.* 103. In Massachusetts, the court advised the governor and council that a woman could not hold the office of notary without legislative action (*Opinion of the Justices*, 150 Mass. 586), and subsequently advised the house of representatives that the legislature could not authorize such appointments because the matter is regulated by the constitution of the state. *Opinion of the Justices*, 165 Mass. 599.

Notaries are not mentioned by name in our constitution. We have not been able to find any statute authorizing their appointment until the General Statutes of 1867 (*c.* 16, *s.* 1), though the fact of their appointment is recognized by various acts, to some of which reference has been made. Whether authority to make the appointment is properly derived from the statute or the constitution is not material upon the present question. Considering it to be derived from the statute of 1867, in the existing state of the law an intent to authorize the appointment of women to the office cannot be inferred in the absence of express language indicating that intent, such as was used in chapter 8, Laws 1872, by which female citizens were authorized to hold office in school districts and as school committee in cities and towns. See G. L., *c.* 87, *s.* 10; Laws 1879, *c.* 57, *s.* 19; *Ricker's Petition*, 66 N. H. 207, 230.

Because by our common law women are disabled from holding public office, because the place of notary public is a public governmental office, and because we are unable to find any evidence of an exercised legislative purpose or intention to change the common law of this state in this respect, if such power exists,—a point not considered,—we are compelled to answer in the negative the question submitted.

FRANK N. PARSONS.
WM. M. CHASE.
REUBEN E. WALKER.
GEORGE H. BINGHAM.
JOHN E. YOUNG.

January 2, 1906.