### J. H. GROVES v. FRANK BARDEN.

(Filed 14 April, 1915.)

**1. Public Officers—Holding Two Offices, Etc.—Constitutional Law—Penalties—Interpretation of Statutes.**

Ordinarily one who occupies a public position which requires him to perform legislative, executive, or judicial acts is a public officer within the intent and meaning of our State Constitution, Art. XIV, sec. 7; and a rural mail carrier being appointed by the Postmaster General of the United States, the head of his department, for the performance of a continuous and not an intermittent service of carrying the mails, and coming within the classification of officers outlined in the Constitution as construed by the Supreme Court of the United States, is subject to the penalty imposed by Revisal, sec. 2365, when in addition to such position he also holds that of a constable. *S. v. Boone*, 132 N. C., 1108, where the incumbent operated a star route under contract with a contractor of the Government, cited and distinguished.

**2. Public Officers—Interpretation of Statutes.**

In determining whether the incumbent of a certain position is an officer within the meaning of Art. XIV, sec. 7, of our Constitution, the fact that the Legislature in creating the position have declared it an office or employment, is entitled to consideration, though not conclusive or determinative.

APPEAL by plaintiff from *Peebles, J.*, at January Term, 1915, of DUPLIN.

Action to recover a penalty of $200, imposed by section 2365 of the Revisal upon any person who shall presume to hold any office or place of trust or profit contrary to Article XIV, section 7, of the Constitution of the State.

The statute confers the right of action to recover the penalty upon any one who shall sue for the same.

The plaintiff offered evidence tending to prove that the defendant was an acting constable and was at the time a rural mail carrier.

His Honor being of opinion that the position of rural mail carrier was not a public office, entered a judgment of nonsuit, and the plaintiff excepted and appealed.

*George R. Ward and John A. Gavin, Jr., for plaintiff.*
*Stevens & Beasley for defendant.*

ALLEN, J. The Constitution, Art. XIV, sec. 7, declares that "No person who shall hold any office or place of trust or profit under the United States or any department thereof, or under this State, or under any other State or government, shall hold or exercise any other office or place of trust or profit under the authority of this State, or be eligible to a seat in either house of the General Assembly."

The line between "offices" and "places of trust or profit" within the meaning of the Constitution has not been clearly marked, principally because they approach each other so closely, and are in all essential features identical.

In *Doyle v. Raleigh,* 89 N. C., 133, the Court, speaking of this question, says: "It is apparent from the association that 'places of trust or profit' are intended which approximate to but are not offices, and yet occupy the same general level in dignity and importance. The manifest intent is to prevent double officeholding—that offices and places of public trust should not accumulate in any single person—and the superadded words of 'places of trust or profit' were put there to avoid evasions in giving too technical a meaning to the preceding words," and this was affirmed in *State ex rel. Wooten v. Smith,* 145 N. C., 476, the Court adding in the latter case: "The most important characteristic which distinguishes an office from a public agency is that the conferring of the office carries with it a delegation to the individual of some of the sovereign functions of the Government. In this respect the terms 'office' and 'places of trust' as used in our Constitution are synonymous. *Doyle v. Raleigh,* 89 N. C., 136; *Barnhill v. Thompson,* 122 N. C., 495."

In determining whether a position is an office, place of trust or profit, or an employment, the authorities, which are collected in the valuable note to *Attorney-General v. Tillinghast,* 17 A. and E. Anno. Cases, 452, attach significance to the fact that an oath to support the Constitution is required, or that a bond for the faithful performance of duties must be executed, or that the duties are prescribed by law, and not regulated by contract, or that the incumbent discharges independent duties and is not acting under the direction of others, or that the duties are continuing and permanent in their nature and are not occasional or intermittent, or that the term is fixed and continuing and not temporary, or that the position is named an office or an employment in the statute creating it; but in the absence of a constitutional provision these are only circumstances which are entitled to consideration, and are not determinative or conclusive.

The editor of the note says: "It may be stated as a general rule, fairly deducible from the cases discussing this question, that a position is a public office when it is created by law, with duties cast upon the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent; while a public employment, on the other hand, is a position which lacks one or more of the foregoing elements."

Our Court is in line with the current of authority, having adopted and approved the definition of an office, that it is "a public position to

which a portion of the sovereignty of the country, either legislative, executive, or judicial, attaches for the time being, and which is exercised for the benefit of the public," and saying further: "The most important characteristic which distinguishes an office from a public agency is that the conferring of the office carries with it a delegation to the individual of some of the sovereign functions of the Government." *S. v. Smith,* 145 N. C., 477.

If, therefore, there is no constitutional classification of offices and employments, and a duty is imposed upon the incumbent of a position which requires him to perform a legislative, executive, or judicial act, he is a public officer, and otherwise an employee; and in determining the nature of the duty, the fact that the lawmaking power may have declared the position an office or an employment, although not conclusive, is entitled to consideration.

If these principles are properly applied, the position of rural mail carrier has all the indicia of a public office.

By reference to the postal laws and regulations of 1913, it will be seen (sec. 718) that rural carriers are appointed by the Postmaster General; that they are required to take an oath to support the Constitution (sec. 722), and to execute a bond to secure the faithful performance of their duties (sec. 723); that the oath is referred to as an official oath (sec. 722); his duties are designated as official duties (sec. 752), and mention is made of the official character of the carrier (sec. 740). His term and his duties are fixed by law and not by contract, and the duties are continuing and not intermittent, and affect the public generally. They are defined to be "the delivery into and collection from boxes on their routes of mail matter of all classes, serving of post-offices with mail whenever such service is authorized, sale of stamps and supplies, receiving and receipting for matter presented for registration, delivery of registered matter, the handling of registered matter in transit over their routes, taking of applications for money orders and the money therefor, the forwarding of mail addressed to their patrons and the transfer of mail of former patrons whose addresses have been changed to other routes, the erection of United States collection boxes, and the performance of such other duties as may be required of them by law and the regulations of the department, to administer oaths required of pensioners and their witnesses in the execution of pension vouchers."

It is also provided in section 741 that a rural carrier shall not hold any State, county, municipal, or township office, which is a prohibition usually imposed upon officers, and not upon employees.

We have thus dealt with the question with reference to public offices generally, and not as applied particularly to positions held under the Government of the United States, but as to the latter there seems to be

a dividing line marked by the Constitution itself between offices and employments.

The Constitution of the United States, Art. II, sec. 2, says the President "shall nominate and, by and with the advice and consent of the Senate, shall appoint ambassadors, other public ministers and consuls, judges of the Supreme Court, and all other officers of the United States whose appointments are not herein otherwise provided for and which shall be established by law. But the Congress may, by law, vest the appointment of such inferior officers as they may think proper in the President alone, in the courts of law, or in the heads of departments"; and in construing this section of the Constitution, the Court said, in *United States v. Germaine,* 99 U. S., 508: "The Constitution, for purposes of appointment, very clearly divides all its officers into two classes. The primary class requires a nomination by the President and confirmation by the Senate. But, foreseeing that when offices became numerous and sudden removals necessary, this mode might be inconvenient, it was provided that, in regard to officers inferior to those specially mentioned, Congress might by law vest their appointment in the President alone, in the courts of law, or in the heads of departments. That all persons who can be said to hold an office under the Government about to be established under the Constitution were intended to be included within one or the other of these modes of appointment, there can be but little doubt."

It was held in this case that a surgeon appointed by the Commissioner of Pensions was not a public officer, because he was not appointed by the head of a department.

The two cases of *United States v. Hartwell,* 73 U. S., 385, and *United States v. Smith,* 124 U. S., 525, illustrate the application of this rule, making the character of the position to depend upon the source of the appointing power.

In the first it was held that a clerk in the office of the Assistant Treasurer of the United States, appointed with the approval of the Secretary of the Treasury, who was the head of the department, was a public officer, and in the second, that a clerk of a collector of customs, appointed by the collector, who was not the head of a department, was not an officer.

In the latter case the Court says: "A clerk of the collector is not an officer of the United States within the provisions of this section; and it is only to persons of that rank that the term public officer, as there used, applies. An officer of the United States can only be appointed by the President, by and with the advice and consent of the Senate, or by a court of law, or the head of a department. A person in the service of the Government who does not derive his position from one of these sources is not an officer of the United States in the sense of the Consti-

tution.  The subject was considered and determined in *United States v. Germaine,* 99 U. S., 508, and in the recent case of *United States v. Mouat,* 124 U. S., 303.  What we have here said is but a repetition of what was there authoritatively declared.  . . .  The case of *United States v. Hartwell,* 73 U. S. (6 Wall.), 385, does not militate against this view.  The defendant there, it is true, was a clerk in the office of the assistant treasurer at Boston, but his appointment by that officer under the act of Congress could only be made with the approbation of the Secretary of the Treasury.  This fact, in the opinion of the Court, rendered his appointment one by the head of the department within the constitutional provision upon the subject of the appointing power."

The question was again considered in *United States v. Mouat,* 124 U. S., 303, and the same conclusion reached, the Court saying:  "What is necessary to constitute a person an officer of the United States, in any of the various branches of its service, has been very fully considered by this Court in *United States v. Germaine,* 99 U. S., 508.  In that case it was distinctly pointed out that under the Constitution of the United States, all its officers were appointed by the President, by and with the consent of the Senate, or by a court of law, or the head of a department, and the heads of the departments were defined in that opinion to be what are now called the members of the Cabinet.  Unless a person in the service of the Government, therefore, holds his place by virtue of an appointment by the President, or of one of the courts of justice or heads of departments authorized by law to make such an appointment, he is not, strictly speaking, an officer of the United States."

The rural mail carrier is, as we have seen, appointed by the Postmaster General, a member of the Cabinet and the head of his department, and therefore comes within the classification of officers outlined in the Constitution as construed by the Supreme Court of the United States, and this position is not in conflict with *S. v. Boone,* 132 N. C., 1108, in which it was held that a carrier of mails operating upon a star route was not a public officer, because the mail carrier in that case was occupying his position under contract with a contractor of the Government, and not by the appointment of the head of any department of Government, as is the rural mail carrier.

It was held in *U. S. v. McRary,* 91 Fed. Rep., 295, that a letter carrier appointed by the Postmaster General was an officer.

We are, therefore, of opinion that his Honor was in error in holding that a rural mail carrier is not an officer.

Error.