STATE OF NORTH CAROLINA on the RELATION of T. B. HARRIS v.
W. W. WATSON.

(Filed 18 November, 1931.)

**1. Public Officers A b—County commissioner is a public officer under the State.**

The provisions of our Constitution, Art. XIV, sec. 7, that "no person who shall hold an office or place of trust . . . under this State . . . shall hold or exercise any other office or place of trust or profit under the authority of this State" applies to the position of county commissioner, a county commissioner being a public officer of the State within the meaning of the section.

**2. Same—A notary public is a public officer under the State.**

A notary public exercises a judicial or *quasi*-judicial function under the government of this State, C. S., 3175, and holds a public office within the contemplation of Art. XIV, sec. 7, of our Constitution although there is no supervisory power given him and he may not be compelled to act in any given case, and to some extent holds his office at the will of the Governor. *S. v. Knight,* 169 N. C., 335, cited and applied. The instance of a special commissioner appointed for a special purpose is distinguished.

**3. Public Officers B c—Where public officer accepts another State office he makes his election and the first office is eo instanti vacated.**

Where one holding an office as county commissioner accepts a commission from the Governor as a notary public he may not hold both offices, Art. XIV, sec. 7, and his right of election is exercised by his acceptance of the second office, and his position as county commissioner is *eo instanti* vacated, and where he continues to exercise the duties of county commissioner he may be removed therefrom in an action in the nature of a *quo warranto.*

BROGDEN, J., dissenting.

STACY, C. J., concurs in the dissent.

APPEAL by relator from *Grady, J.,* at Chambers, on 30 April, 1931. Reversed.

This is an action in the nature of a *quo warranto* brought by the Attorney-General of the State of North Carolina on the complaint of the relator, a citizen of this State, and a resident and taxpayer of Hyde County, to oust the defendant from the office of county commissioner of Hyde County, on the ground that defendant now unlawfully and wrongfully holds and exercises said office. C. S., 870(1).

The facts alleged in the complaint are as follows:

1. At the election held in November, 1930, the defendant, W. W. Watson, was duly elected as a county commissioner of Hyde County for a term of two years; pursuant to said election, on the first Monday in December, 1930, the defendant was duly inducted into said office of county commissioner of Hyde County, and since said date has held and exercised said office, and continues so to do.

2. On 24 March, 1931, while he was holding and exercising the office of county commissioner of Hyde County, pursuant to his election thereto in November, 1930, the Governor of North Carolina appointed the defendant, W. W. Watson, a notary public in and for this State, and duly issued to said defendant a commission as notary public; on 3 April, 1931, the defendant accepted said appointment and duly qualified as a notary public, as provided by statute.

3. Since his acceptance of his appointment by the Governor of North Carolina as a notary public, and his qualification for the performance of his duties as such, the defendant has been requested by citizens of this State, who are residents and taxpayers of Hyde County, to vacate the office of county commissioner of said county; the defendant has declined and refused to vacate the office. He continues to hold and exercise the office of county commissioner of Hyde County, and to hold himself out as qualified to act as a notary public in this State, notwithstanding the provisions of section 7 of Article XIV of the Constitution of North Carolina.

4. Section 7 of Article XIV of the Constitution of North Carolina is as follows:

"No person who shall hold an office or place of trust or profit under the United States, or any department thereof, or under this State, or under any other State, or government, shall hold or exercise any other office or place of trust or profit under the authority of this State, or be eligible to a seat in either house of the General Assembly; *Provided,* that nothing contained herein shall extend to officers in the militia, justices of the peace, commissioners of public charities, or commissioners for special purposes."

The action was heard on a demurrer filed by the defendant, on the ground that the facts stated in the complaint are not sufficient to constitute a cause of action on which the relator is entitled to the relief prayed for. The demurrer was sustained, and the action dismissed.

From judgment dismissing the action, the relator appealed to the Supreme Court.

*O. L. Williams for relator.*
*T. S. Long and MacLean & Rodman for defendant.*

CONNOR, J. The question of law presented by this appeal is whether a person who lawfully holds and exercises the office of county commissioner of one of the counties of this State, and who while holding and exercising said office, accepts an appointment as a notary public by the Governor of North Carolina, made under C. S., 3172, thereby forfeits and vacates the office of county commissioner, by reason of the provisions of section 7 of Article XIV of the Constitution of North Carolina. The answer to this question involves the nature of the position of notary public, under the laws of this State.

Referring to the provisions of section 7 of Article XIV of the Constitution of this State, *Faircloth, C. J.,* in *Barnhill v. Thompson,* 122 N. C., 493, 29 S. E., 720, says: "This provision is plain and leaves no room for construction whenever the two places under consideration are found to be public offices." *Smith, C. J.,* in *Doyle v. Raleigh,* 89 N. C., 134, says that the manifest intent of the provision is to "prevent double office-holding—that offices and places of public trust should not accumulate in a single person and the super-added words of 'places of trust or profit' were put there to avoid evasions in giving too technical a meaning to the preceding word." The prohibition is expressed in language which is clear and unambiguous, and must be enforced, notwithstanding the character or relative importance of the two offices. In view of the language of the Constitution, the question as to whether the two offices,

which one person undertakes to hold and exercise at the same time are or are not compatible, is immaterial.

The question as to whether the place of county commissioner of a county of this State is an office held under this State, within the meaning of section 7 of Article XIV of the Constitution, is not open to debate. It was so held in *Barnhill v. Thompson, supra.* In that case, *Faircloth, C. J.,* says: "An office is defined by good authority as involving a delegation to the individual of some of the sovereign functions of government to be exercised by him for the benefit of the public, by which it is distinguished from employment or contract." Under this definition, which is supported by authoritative judicial decisions, in this and other jurisdictions, and is in accord with definitions of approved text-writers, the position of county commissioner of a county of this State, is clearly an office held under this State, within the meaning of section 7 of Article XIV of the Constitution. Section 1 of Article VII of the Constitution provides that in each county of the State there shall be elected biennially by the qualified voters thereof the following officers: a treasurer, register of deeds, surveyor and *five commissioners.* The powers to be exercised by the county commissioners of a county are prescribed by statute. C. S., 1297. These powers clearly require the exercise of governmental functions. In the instant case, it is conceded that at the date of his appointment and qualification as a notary public, the defendant, W. W. Watson, was lawfully holding and exercising an office under this State, within the meaning of section 7 of Article XIV of the Constitution, to wit, county commissioner of Hyde County.

Is the position of notary public, to which the defendant was appointed by the Governor of North Carolina, and for which he has qualified as provided by statute, an office held under this State, within the meaning of section 7 of Article XIV of the Constitution? If it is such office, then, without regard to its relative importance, and without regard to whether or not the powers conferred by statute upon one who holds and exercises the position, are compatible with the powers of a county commissioner, the defendant, by his acceptance of the appointment thereto by the Governor, and his qualification therefor as provided by statute, elected to vacate his office of county commissioner of Hyde County, and now unlawfully holds and exercises said office. Otherwise he has not made, and was not required to make an election. In *Barnhill v. Thompson, supra,* it was held that the acceptance of a second office by one already holding another office under this State operates *ipso facto* to vacate the first office. In the opinion in that case, it is said: "The right of election must be admitted in all such cases. If the acceptance in this case, and entry did not vacate the first, what did it do? It is difficult to understand how the defendant could accept the second and hold the

first in the same breath, and thereby do what is expressly forbidden by the Constitution. Reason as well as public policy forbids it." In *Midgett v. Gray,* 159 N. C., 443, 74 S. E., 1050, it is said: "It is well settled that the acceptance of and qualification for one office vacates *eo instanti* one office already filled by the same incumbent." This principle is referred to with approval in *S. v. Wood,* 175 N. C., 809, 95 S. E., 1050. It is well settled as the law in this State.

In *S. v. Knight,* 169 N. C., 335, 85 S. E., 418, one of the questions of law discussed and decided by this Court was whether the position of notary public, under the law in this State, is a public office. This question was directly presented in that case. It was held that the position is a public office, within the meaning of section 7 of Article VI of the Constitution of North Carolina. In that case, the question chiefly involved, and which was determinative of the appeal, was whether a woman was eligible, under the law then in force in this State, for appointment as a notary public. It was held that as a woman was not a voter under section 1 of Article VI of the Constitution of North Carolina, she was not eligible for election or appointment to an office. Section 7 of Article VI, Constitution of North Carolina. The Court was of opinion, and so held, that the position of notary public is a public office within the meaning of section 7 of Article VI of the Constitution, and for that reason a woman was not eligible for appointment as notary public, notwithstanding an act of the General Assembly of this State (chap. 12, Pub. Laws 1915), expressly authorizing the Governor to appoint women as well as men as notaries public, and declaring that the position of notary public should be deemed a place of trust and profit and not an office. The act of the General Assembly was held to be void, on the ground that the General Assembly was without power to declare that a position which by reason of the powers which were conferred on one holding the position was a public office, was not such office, but only a place of trust and profit.

The decision in *S. v. Knight, supra,* that the position of a notary public, under the laws of this State in force at the date of the decision, is a public office within the meaning of section 7 of Article VI of the Constitution, was made after an exhaustive examination of the authorities in this and other jurisdictions, and after a full and careful consideration of the principles of law applicable to a decision of the question. *Allen, J.,* writing the opinion for the Court, says: "In Mechem on Public Officers, section 1, it is said that an office is a public position to which a portion of the sovereignty of the country, either legislative, executive or judicial, attaches for the time being, and which is exercised for the benefit of the public; this definition was adopted and approved in a unanimous opinion of this Court in *S. ex rel. Wooten v. Smith,*

145 N. C., 476, 59 S. E., 649, and again at this term in *Groves v. Barden,* 169 N. C., 8, 84 S. E., 1042, and in the latter case it was also said that the performance of an executive, legislative or judicial act is the test of a public office." This test was applied to the position of a notary public. It was said that one of the duties which a notary public may perform is taking the probate of deeds, and that this is a judicial act. The powers which are conferred upon notaries public in this State are judicial in their nature. C. S., 3175.

It is true as pointed out in the brief filed in this Court by the learned counsel for the defendant that *Clark, C. J.,* and *Brown, J.,* dissented in *S. v. Knight. Justice Brown,* however, concedes that the weight of authority supports the decision of the Court in that case. He cites no authority to the contrary, nor does he discuss the principles relied on by the Court as sustaining its decision. He rests his dissent solely on his opinion that the defendant in that case, although a woman, was qualified to perform the duties of a notary public. Manifestly, this was not involved in the case, and would doubtless have been conceded by the three members of the Court, whose opinions upon the questions of law involved resulted in the decision. A careful reading of the dissenting opinion of *Clark, C. J.,* may well leave the reader under the impression that the learned and prophetic *Chief Justice* was more concerned with what he thought the law as applied to the facts in that case ought to be than with what it had been declared to be in this and other jurisdictions. One may well sympathize with this view, without being able to reach the conclusion on which the *Chief Justice* in part rests his dissent.

It is needless, we think, to reëxamine the authorities or to discuss again the principles of law on which this Court relied in its decision in *S. v. Knight,* that the position of a notary public, under the law of this State, is a public office. If the position is a public office within the meaning of section 7 of Article VI of the Constitution of North Carolina as was held in that case, it seems to follow that it is a public office within the meaning of section 7 of Article XIV. The test by which to determine whether a position created by statute is a public office, adopted and approved in *S. v. Knight,* was applied by this Court in *S. v. Scott,* 182 N. C., 865, 109 S. E., 789. Applying this test, this Court has held that the position of notary public, created by statute in this State is a public office, and this holding must be regarded as authoritative. The powers conferred by statute upon a notary public are judicial, or at least *quasi*-judicial, in their nature. Upon this principle it was held in *Long v. Crews,* 113 N. C., 256, 18 S. E., 499, that where a notary public was interested in a deed of trust as a preferred creditor therein, he was disqualified to take the acknowledgment and his attempted action was a nullity. In that case it was said by *Clark, J.,* "In this State it is settled

law that an acknowledgment of a deed by the husband, and privy examination of the wife taken before a justice of the peace, commissioner or notary, is a judicial, or at least a *quasi*-judicial act."

It has been suggested that since the enactment of chapter 117, Public Laws 1927, authorizing the Governor in his discretion to revoke a commission issued by him or by his predecessor to a notary public, a notary public in this State holds his office at the will of the Governor, and not for a fixed term, and that by reason of this statute the decision in *S. v. Knight* is no longer controlling. This suggestion is, we think, not well founded, but even if the statute has the effect suggested, it does not affect the question involved in this case. The test as to whether a position created by statute is an office is not the term of one holding the position, but the power conferred upon him while he is lawfully holding the position. Upon this principle, it is immaterial that a notary public cannot be required to exercise any of the powers conferred on him by statute. When he does exercise any of these powers, he acts judicially, and therefore cannot ordinarily be held for damages resulting from his acts. *Yates v. Ley,* 121 Va., 265, 92 S. E., 837; *Henderson v. Smith,* 26 W. Va., 829, 53 Am. Rep., 139.

Counsel for defendant in their brief filed in this Court, concede that the authorities are apparently against the contention that the position of a notary public is not a public office. They suggest that it may be held that the position is that of a commissioner for a special purpose, within the meaning of the proviso in section 7 of Article XIV of the Constitution. We do not think this suggestion is well founded. A commissioner for a special purpose exercises no governmental power, and is therefore not a public officer.

The learned judge of the Superior Court by whom this case was tried was not inadvertent to the decisions of this Court with which his decision is in conflict. In his judgment, he expresses his disapproval of these decisions, and suggests that this Court, as now constituted, may overrule these decisions. We are not inadvertent to the practical situation which the judge of the Superior Court had in mind when he made the suggestion, but are of the opinion that these decisions are well supported by the authorities, and are in accord with well settled principles of law. The practical situation which gave rise to the suggestion would not justify this Court, as now constituted, in overruling decisions made by our predecessors which have been justly regarded as the law of this State. It cannot be said too often that it is the function of a court to declare what the law is, and not what its members as individuals think it ought to be.

There is error in the judgment dismissing the action. The judgment must therefore be

Reversed.

BROGDEN, J., dissenting: Is a notary public a judicial officer of the State? All the courts are in accord upon the proposition that an officer is one who exercises in some degree the sovereignty of the State. Under our system of government this sovereignty is allocated to three units, to wit: legislative, executive, and judicial. No court has ever suggested that a notary public exercises any legislative or executive functions. Consequently, any power he may exercise must fall within the judicial classification. The main question propounded may be conveniently considered under two aspects: First, is a notary public a State officer? Second, if so, is he a judicial officer of the State? A notary public is not mentioned in the Constitution, and, therefore, if he be an officer at all, his official character and quality must rest either upon the common law or upon a statute. It is familiar learning that the common law, like the air, pervades the whole structure except when it has been displaced by a statute. In this State the entire subject rests upon statute, and hence the common-law concept disappears from the discussion. Prior to 1927 a notary had a fixed term of office, but chapter 117 Public Laws of 1927 made a radical change in the status of a notary public. In substance, that chapter provided that a notary public hold office for two years from and after the date of appointment. This was the same provision appearing in prior statutes. The statute of 1927 provided that "any commission so issued by the governor . . . shall be revocable by him in his discretion upon complaint being made against such notary public and when he shall be satisfied that the interest of the public will be best served by the revocation of the said commission." That is to say that, if complaint be made to the governor, he can remove a notary without cause, without a hearing, and without notice. This radical change of the statute may well be interpreted to mean that a notary now has no fixed term, and in a sense, and by analogy, is merely a tenant at the will of the governor. But conceding that he has a fixed term, the very fact that he is removable without notice, without a hearing, and in the discretion of the appointive authority, takes him out of the status of any other officer known to our law. C. S., 3204, provides in substance that every officer "shall be held, deemed, and taken, . . . to be rightfully in such office until, by judicial sentence, upon a proper proceeding, he shall be ousted therefrom, or his admission thereto be, in due course of law, declared void." Prior to 1927 a notary was removable by *quo warranto*, which was the exclusive remedy recognized by law for removing public officers of the State. This remedy was pursued in *S. v.*

*Knight,* 169 N. C., 333, 85 S. E., 418. Furthermore, this Court has held that an office or place of trust within the meaning of Article XIV, section 7, of the Constitution was such as to be determined by *quo warranto. Eliason v. Coleman,* 86 N. C., 236; *S. v. Smith,* 145 N. C., 476, 59 S. E., 649. Without undertaking to quote or discuss the various statutes applicable, the status of a notary public may be fairly summarized as follows: (a) If he is an officer of the State, then he is removable without hearing, without notice, and without cause, and in this respect his status differs from that of any other State officer known to the law. (b) If he be a State officer, then he is an officer who is not required to perform any public duty whatsoever, and no court can issue a mandamus against him to require the performance of any act. A notary public is authorized to take the acknowledgment of deeds, and to take depositions provided he chooses to do so and the parties are able and willing to pay the fee fixed by the statute. No law makes it the duty of a notary to administer an oath to anybody or to take the acknowledgment to any sort of instrument. His services rest upon his own choice and contract with the parties seeking such services. (c) If he be a State officer, then he is an officer who is not responsible to any person or tribunal in the performance of his official acts. He is required to keep no records and to make no reports, and is subject to no supervisory power in the method of the performance of his official duties.

Notwithstanding, it is conceded that practically all of the courts have declared that a notary public is an officer. In some instances he has been classified as a State officer and in others as a county officer. An array of the cases are assembled in *S. v. Knight,* 169 N. C., 333, 85 S. E., 418. In many of these cases, the question arose upon the qualifications of a woman to act as notary, in view of constitutional provisions limiting office holding to males. The leading cases, which are most frequently cited are: *Opinion of the Justices,* 62 Atl., 969, from New Hampshire; *Opinion of the Justices,* 23 N. E., 850, from Massachusetts; *S. v. Davidson,* 92 Tenn., 531; *S. v. Hodges,* 107 Ark., 272; *Opinion of the Justices,* 21 Pac., 473, from Colorado. In all of the foregoing cases, the question for decision was whether a woman was qualified to act as a notary. Hence it is hard to escape the conclusion that the policy of woman suffrage, as in *S. v. Knight, supra,* was the sub-soil out of which the decisions grew.

Omitting any discussion of the qualifications of a woman to perform the duties of a notary, an examination of the authorities leads the mind to inquire: Why have the courts held that a notary is an officer? The answer is as variable as the lights and shadows of a summer dawn. Some courts refer to the fact that a notary was an officer at common law. In others, statutory and constitutional provisions constitute the basis for the

conclusion. These provisions also, are frequently dissimilar. For in-
stance, the Massachusetts case, *Opinion of Justices,* 43 N. E., 927, dis-
closes a constitutional provision as follows: "Notaries public shall be
appointed by the governor in the same manner as judicial officers are
appointed, and shall hold their offices during seven years, unless sooner
removed by the governor, with the consent of the council, upon the
address of both houses of the legislature."

In New York, when the *Rathbone case* was decided, 40 N. E., 305,
notaries were appointed by the governor, with the consent of the senate
and their duties are set forth in statutes prescribing the duties of
judicial officers.

The New Hampshire law in force at the time of the decision of
*"Opinion of Justices,* 73 N. H., 621" provided that notaries should hold
office "subject to be removed by the senate upon impeachment, or by
the governor with the consent of the council on the address of both houses
of the legislature, etc. At the time of the rendition of the decision of
*S. v. Hodges,* 107 Ark., 272, *supra,* the Constitution of Arkansas pro-
vided that militia officers, officers of public schools and notaries may be
elected to fill any executive or judicial office.

The whole aspect of this phase of the subject is tersely stated by the
Tennessee Court in *S. v. Davidson, supra:* "The matter depends in each
state upon the provisions of the Constitution and the statutes."

The term "officer," employed in many of our statutes and decisions
is elastic and variable. For instance, an attorney is frequently referred
to as an officer of the court. He takes a public oath, and is authorized
to practice by the supreme judicial authority of the State. In time
past, his fees, in many instances, were prescribed by law. Manifestly,
he discharges a public function, but no court has ever held that he was
a State officer. Indeed, he is not an officer at all, because his services
rest upon choice and contract.

It would seem to be obvious that the term "officer" has a primary
and a secondary signification. In its primary signification, it denotes
a person who exercises, in some degree, the sovereign power of the State.
In its secondary signification, it denotes merely a public employment or
the performance of some act of a public nature, not involving the exer-
cise of the sovereignty of the State.

As I construe the statute now in force, after the amendment of 1927,
a notary is not a State officer, and it was not contemplated that he should
in any sense exercise the mighty powers of sovereignty.

The Constitution deals with sovereignty. It undertakes to define and
parcel out sovereign power. Hence, I am persuaded that the words:
"office or place of trust," used in the Constitution, Art. XIV, sec. 7, em-

ployed the terms in their primary signification, and that a notary is not within the purview or contemplation of that provision.

Nevertheless, this Court has held in several decisions, culminating in the *Knight case, supra,* in which all the cases are assembled, that a notary public is a judicial officer. The judicial function is supposed to reside in the act of taking the private examination of a married woman. The notary is supposed to question her privately as to whether she is afraid of her husband or signs the instrument through fear, but when the married woman answers his questions there is nothing he can do about it. He can fill up the certificate or not as he likes. If the married woman admits that she signed the instrument through fear of her husband, he can certify that fact to the clerk or not. If she says that she did sign without fear or compulsion, he can certify that fact to the clerk or not.

But, at all events, there is nothing for him to pass upon or adjudge. He is the maker of a certificate of facts and no more. Of course, the law adds a certain verity to his certificate when properly attested, but it adds the same verity to the certificate of a commissioner of affidavits and deeds appointed under C. S., 963, and it has never been suggested in this State that a commissioner of deeds, residing in a foreign state, is either an officer or a judicial officer of the State of North Carolina.

No useful purpose will be served by debating the question as to whether a notary is a judicial officer. This is purely a matter of opinion and of individual interpretation of the statutes. The records in the office of the Governor disclose that there are now five thousand five hundred and sixteen qualified notaries in North Carolina, and if all of these be judicial officers of the State, it is obvious that the judiciary is blessed with an overwhelming variety of personnel.

*S. v. Knight, supra,* was decided by a divided Court. Nevertheless, it stands as the law, although it may be reasonably contended that the amendment of the notary law, contained in Public Laws 1927, chapter 117, changes in an essential degree the entire concept of a notary public. Be that as it may, my mind is unable to follow either the reasoning or the interpretation of precedents as contained in *S. v. Knight.* I concede that the discussion as to whether a notary public is a judicial officer of the State is like loading a shotgun with buckshot to shoot a sparrow, but in the case at bar, a man, who has been duly elected by the people to an important office, forfeits his office because he has been authorized by the Governor to make and sign a certificate as to what a married woman says when she signs a deed, when it must be conceded that there is nothing at all he can do about it.

I am authorized to say that *Stacy, C. J.,* concurs in this opinion.