## STATE cx BADEN v GIBBONS

Ohio Appeals, 1st Dist, Butler Co

Decided May, 1934

342

Harry Koehler, Jr., Hamilton, for respondent.

C. W. Elliott, Middletown, and Henderson Estes, Middletown, for relator.

WILLIAMS, PJ, and LLOYD, J, (6th Dist), and SHERICK, J, (5th Dist) sitting.

## OPINION

By SHERICK, J.

While this court is not in full agreement upon the applicability of the reason and holding of the court in **Flotron v Barringer, 94 Oh St, 185,** due in part to the fact that Dayton's charter government provides for a city manager form of government while the government of Middletown is by commission without a manager; nevertheless, a majority of us are of opinion that what was therein said might just as readily be said in the present instance, and by reason of the court's pronouncement in that case we begin a consideration of this cause with the settled principle that the terms "council" and "commission" are identical and synonymous, when such relate to municipal corporations and refer to the legislative authority of any city, without designating that authority by any name. **Article XVIII of the Ohio Constitution** refers to a city's legislative authority in this manner. Two paragraphs in the opinion of the case referred to may here be quoted with profit in support of the premise assumed and the defendant's claim that the addition of administrative duties to the legislative duties of a council precludes the application of §4207, GC, to the developed situation and renders such section in conflict with the city's charter. It is therein held:

"The charter of the city of Dayton, however, confers upon this commission further governing powers not possessed by the city council of other cities of the state and not coming within those powers recognized as legislative. These added powers do not necessarily distinguish that body from a city council, for this charter might have retained the statutory council and con-

ferred upon it all the powers and duties in addition to its legislative authority that it conferred upon the commission. It is not the name, but the powers and duties, of the office, that determine its character.

"This commission is the legislative authority of the city of Dayton, and that fact, and not the fact that it has further governmental powers, fixes and determines the nature of the office. In this important respect it corresponds to the council in other cities and is to all intents and purposes the council of the city of Dayton."

Two general sections, or portions thereof, of the General Code of Ohio, are drawn in question by this action. They are respectively §§9 and 4207, GC, which provide that:

"Sec 9 GC. A deputy, when duly qualified, may perform all and singular the duties of his principal.

"Sec 4207 GC. Each member of council shall be an elector of the city, shall not hold any other public office or employment, except that of notary public or member of the state militia, and shall not be interested in any contract with the city. A member who ceases to possess any of the qualifications herein required, shall forthwith forfeit his office."

Section 2 of Article I of the charter of Middletown provides, that "all general laws of the state of Ohio, applicable to municipal corporations, now existing or hereafter enacted, not in conflict with the provisions of this charter, or with the ordinances enacted thereunder, shall apply to the government of the city of Middletown." It therefore becomes material to further search this charter to ascertain if §4207 GC, is now in conflict with its further provisions. §2 of Article II thereof prescribes the qualifications that must be possessed by a member of the city commission. It says that they shall be "electors residents of the city of Middletown, who shall be nominated and elected as hereinbefore stated." It is clear therefrom that one is not qualified for nomination and election to this office unless he is a resident and elector of the city. This section does not attempt to prescribe what act, if any, shall vacate the office to which one possessed of these qualifications has been legally elected. It treats only of the qualifications before and at the time of election and not of any such qualifications that must continue to be possessed after election.

Sec 4207, GC has two distinct purposes.

It first recites the four qualifications that one must possess to be eligible to the office of councilman. Its second consideration being that if one duly elected shall cease to possess these qualifications he shall forthwith forfeit his office. If this is not true, then the electorate of this city finds itself in a queer situation should a duly qualified and elected commissioner after election change his residence to a place outside the city limits; for the charter no place therein prescribes that one should continue to live among the constituency which he represents. Such representation is repugnant to our form of government. The electorate's only redress would be a recall election.

Section 2 of Article IV of the charter must further be considered It is therein declared:

"No officer to be interested in contracts. No member of the city commission or any other officer or employee of the city shall be interested in the profits or emoluments of any contract, job, work or service for the city. Any member who is, or may become interested in any contract, job, work or service for the city, shall forthwith forfeit his office. Any contract in which any member of the city commission is or may become interested in any way whatsoever, may be declared void by the city commission."

It might be said that in one respect, that this section presumes to supplant the second intendment of §4207, GC, and that by exclusion of the other three qualifications from the charter provision, the section and the statute conflict. Such a conclusion would indeed be far fetched, for if we further search the statutes it is apparent that the electorate of the city of Middletown were by this section of the charter trying to legislate against what the General Assembly frowned upon in the enactment of §12912, GC. If this section of the code is examined along with the charter provision quoted, the similarity of words used and purpose intended is at once apparent. This charter provision applies to all municipal officers, it does not go to the question of qualification to hold office after election, but is a penalty inflicted for the doing of an unconscionable and prescribed act.

No further charter provision in any way has to do with the question presented; and it is conceded that no charter provision or ordinance permits a commissioner to hold the office of deputy county officer or any

other public office or employment. Hence it must follow that the city's electorate adopted no provision in its charter which conflicted with the general statutory requirement prescribed by the second purpose and intendment of §4207, GC. It is our conception of the law that when the electorate of a city adopts a charter, and nowhere therein legislates upon a matter upon which it may properly legislate contra to the existing general law of the state, and does in fact by general reference, adopt the state law on any subject; that the general statute or separate portions thereof, thus undisturbed, becomes as much a part of the law applicable to the government of that city as if it were a part of the charter itself. Such is the conclusion reached in **Mulcahy v City of Akron**, 161 NE 542 (2 Abs 566). The rule is that repeals by implication are not favored. Surely it can not be logically advanced that what may not ordinarily be done by statute, is done when cities adopt charters which do not conflict with a general statutory provision. It is held, per example, that city charter provisions may designate how its legislation shall be published. But if it is not otherwise so provided, the general law must be followed and not disregarded.

Although defendants counsel expends much energy upon the theory that the offices or employments are not incompatible, the court unanimously disagrees therewith. The case of **Hulle v State**, 35 Oh St, 421, is urged as authority for this view. An examination of this case discloses, that, as a matter of statutory construction, a deputy county auditor could not act for the county auditor in a particular instance, that is in the selection of jurors, because of a special statute providing that in the absence of the county auditor the court should appoint some one to perform this duty in his stead. The statute upon which this case turned was a subsequent general act which placed a special exception and limitation upon the general authority conferred upon deputy auditors by §9, GC. The case is therefore not authority for the theory advanced.

It has long been the rule in this state that one may not hold two positions of public employment when the duties of one may be so administered and discharged that favoritism and preference may be accorded the other, and result in the accomplishment of the purposes and duties of the second position, which otherwise could not be effected. To countenance such practice, would but make it possible for one branch of government or one individual to control the official act and discretion of another

independent branch of the same government or of interlocking governments which are constructed so as to operate in conjunction with each other. If the possible result of the holding of two positions of public trust leads to such a situation, then it is the rule, both ancient and modern, that the offices are incompatible and are contrary to the public policy of the state.

To our notion that portion of §9, GC, above quoted is so plain and clear that it is not in need of court construction. It means exactly what it says, in that "a deputy, when duly qualified, may perform all and singular the duties of his principal," unless that power has been subsequently limited by some special act thereafter passed. We therefore take the view that a deputy county auditor, as distinguished from a mere clerical employee, may in the absence of his principal perform the duties of the county auditor. One of the many duties of that office is created by §5625-19, GC, which makes the county auditor a member of the county budget commission. As a member thereof, he assists in adjusting the amounts budgeted by the various taxing divisions and revises the estimates and equalizes the total tax levied and collected between the various taxing subdivision. He is further clothed with authority to value property for taxation, and to fix the rates of taxation, and to consider exemptions claimed; and to distribute special taxes collected by the state, such as gasoline and inheritance taxes.

This court cannot be blind to the fact that the duties of a county auditor in tax matters have become highly technical in character, and that many auditors are not possessed of this special knowledge, and that many auditors appoint as their deputies persons experienced in tax matters who have almost exclusive charge thereof. This being true, it is quickly discernible that such a deputy might favor and prefer a municipality of which he was a councilman or commissioner at the expense of another taxing division, such as a school district or township which must levy upon the same property. As a commissioner, he assists in the budgeting of the municipal requisition made upon the county budget commission, and as a member thereof he might purposely favor the municipality. It is therefore our judgment that the positions held by the defendant are incompatible. We direct attention to two cases of almost parallel situations found in the Massachusetts case of Atty. Gen. v Tillinghast, 89 NE, 1058, and Wells v State, 175 Ind., 380, 94 NE, 321, Ann. Cas., 1913C-86. It is the general rule, as

stated in 22 R.C.L. 418, §63, "that the acceptance of a second office, incompatible with one already held, vacates the first."

There appeals to the writer of this opinion a further sound and unassailable reason why the writ as prayed for should issue in this instance. In **State ex Shank v Gard, 8 O.C.C. (N.S.), 599,** affirmed without report ih **75 Oh St, 606, §4207, GC,** is again considered. It is held that:

"The inhibition against the holding of other public office or employment, found in §120 of the municipal code (Revised Statute §1536-613), (now §4207, GC), relating to the qualifications of councilmen, is not limited to other office or employment by the municipality, but extends to all public office and employment."

"This is held to be apparent because of the fact that the statute exempts notary publics and militiamen therefrom, and which are not municipal but state offices. The case of **State ex Egry, 79 Oh St, 400,** (407), considers just what are the qualifications contemplated by this section. It is therein said:

"The qualifications here prescribed are: 1. Residence in the city and ward for one year next preceding the election. 2. That he shall be an elector of the city. 3. That he shall not hold any other public office or employment, excepting that of notary public, or member of the state militia. 4. That he shall not be interested in any contract with the city. These are "qualifications" within that term in §1563-612 GC."

Sec 4237, GC, prescribes that council shall be the judge of the qualifications of its own members. And now digressing from the point to be further considered because of the claim advanced that the commission is the exclusive judge of the question raised by this proceeding; we again make further reference to the Egry case, supra, to refute this contention. It is therein further held, that

"The weight of authority is to the effect that a constitutional provision that each house shall be the judge of the election and qualification of its members confers upon it exclusive jurisdiction, but that a statutory provision that a city council shall be the judge of the election and qualification of its members does not unless it expressly so provided, make the council the exclusive judge."

Sec 4237, GC does not expressly make council the exclusive judge of the election

and qualification of its members. The court in the Egry case points out that this section "makes no reference to qualifications for office," and extensively quotes from People ex v Hall, 80 N. Y., 117, which might be pursued with profit but is too long for present comment. One further paragraph from the Egry case disposes of the defendant's claim that council is the exclusive judge of the qualifications of its own members. It is therein stated:

"And so here, we think quo warranto will lie to determine whether the facts, upon which council has determined one of its members or one elected to the office of councilman to be disqualified, constitute in law, a ground of disqualification. Council is the exclusive judge of the facts of disqualification, but it can not disqualify excepting on legal grounds, and whether the facts found by it constitute such ground is a question of law which may be determined by the courts."

It is further considered in **State ex Gillen, 112 Oh St, 534** (541), that "this court in the case of **State ex v O'Brien, 47 Oh St, 464,** 25 NE, 121, has virtually held that quo warranto may be employed to inquire into the title of a person to the office of member of a city council."

The rule, as we understand it to be, is that unless it appear with unequivocal certainty that exclusive jurisdiction is lodged by the legislature in a city council to determine the qualifications of its members, then a court of proper jurisdiction in an action in quo warranto may inquire into and by what authority a councilman presumes to enjoy such office. Such power, general in character, reposes in the courts and unless that judicial function be taken away and lodged exclusively in council, courts may act in proper case.

It is stated in **State ex v Gebert, 12 O. C.C. (N.S.), 274,** "Indeed, it may almost be said to be a part of the common law, that an Ohio man may occupy as many offices as he can be elected or appointed to. It is left to his own sense of fitness and propriety as to whether he should ever decline any." But this to our notion is far too broad a statement when applied to the specific instance of a councilman viewed in the light of the "qualification" required to be possessed by a councilman after election by the second purpose appearing in §4207, GC.

This section plainly states that a councilman "shall not hold any other public office or employment," and if he ceases to

possess this "qualification," then he "shall forthwith forfeit his office." It is self evident that the word "public" not only modifies the word "office" but the word "employment" as well. Hence it seems indeed unprofitable, to further consider the question made as to whether or not the defendant as a deputy in some capacity in the office of the county auditor is an officer, for any vestige of a spirit of fairness must concede that the defendant is engaged in a "public * * *" employment," which is forbidden by the statute, not in the sense, as the same was forbidden under the present statute's predecessor, that is Rev. Stat. 1717, long since repealed. The old statute made a member of council "ineligible to any other office," from which it would naturally follow if the position of a deputy county auditor is an office, and if the repealed section were now in force, the defendant would have been ineligible for appointment as a deputy county auditor, and his attempted appointment would be a nullity. He could not have accepted the second office for he would have been ineligible to appointment, and his office of councilman would not have been vacated. Such was the holding of our courts under this statute. The present §4207, GC, is entirely dissimilar in its purpose and specific requirements.

The general rule is succinctly further stated in 22 R.C.L. 418. §63; "the acceptance of a second office, incompatible with one already held, vacates the first, and this is true whether the incompatibility is based on the common law or by reason of a constitutional mandate, or because of an express statutory direction to the effect that an office becomes vacant when the incumbent accepts and undertakes to discharge the duties of another incompatible office." In the case of a constitutional or statutory command it is not a question as to whether or not the offices or employments are incompatible in the light of the various definitions as to what makes offices incompatible, for our legislature in its wisdom has seen fit to declare that all public office and employment, other than that of a notary public or militiaman is incompatible with the office of councilman. Mecham in his work on Public Offices and Officers in §429 says:

"Where, however, it is the holding of two offices at the same time which is forbidden by the constitution or the statutes, a statutory incompatibility is created, similar in its effect to that of the common law, and, as in the case of the latter, it is well settled that the acceptance of a second office of the kind prohibited, operates ipso facto to absolutely vacate the first."

"No judicial determination is therefore necessary to declare the vacancy of the first, but the moment he accepts the new office the old one becomes vacant, as is said in one case 'His acceptance of the one was an absolute determination of his right to the other' and left him 'no shadow of title, so that neither quo warranto nor a motion was necessary'."

A valuable note appears in 1917 A-LRA-Pg. 216 (227), dealing with incompatibility of offices at common law. The part thereof pertinent to the present controversy, being:

"Attention is here called to the fact that, in a number of cases in which certain offices have been held to be within constitutional or statutory provisions against holding two offices, the courts have used the term 'incompatibility' as designating the inconsistency existing between the offices, and have said that the effect of such incompatibility is to render the first office vacant by reason of the acceptance of the second. Such cases are, of course, not within the scope of this note, **the real question involved being one of the interpretation of the statute, and not at all of incompatibility.**"

It is held in State ex Harris v Watson, 201 N. C. 661, 161 SE, 215, 79 A.L.R. 441, that in such case it is not a question of compatability of offices for such is by the statute made immaterial. See also Oliver v Jersey City, 63 N. J. L., 634, 44 A. T. L., 7089, 48 L.R.A., 412, People v Brooklyn, 77 N. Y., 503, 33 Am. Rep., 659, Wells v State, 175 Ind., 380, 94 NE, 321, Ann. Cas., 1913C, 86, to the same effect.

It is therefore the judgment of this court, that the question at issue must be and is resolved against the defendant. It is ordered that the writ shall issue as prayed for.